## CALISTA T. SAWYER, Administratrix of Estate of W. G. Sawyer, v. ALTEN M. WALKER, Appellant.

**Division Two, May 14, 1907.**

1. **RECEIPT: Commissions: False Representations.** Receipts given by plaintiff to defendant, a real estate agent, with whom plaintiff was associated in the selling of certain lands under an agreement that he was to have one-half the agent's commissions, obtained by false representations that the amount named in the receipts was one-half of all the commissions defendant had received, and the acceptance of the amount named and the retention thereof, are no bar to an action for the balance actually due.

2. ———: ———: ———: **Fraud and Deceit: Contract.** In an action for fraud and deceit, it is not necessary to set out or plead a contract between plaintiff and defendant.

3. ———: ———: ———: **Acceptance.** Where plaintiff testified that he accepted defendant's proposition to receive one-half the commissions as his compensation for furnishing buyers for lands which defendant had for sale, and went to work under it to procure the purchasers, that is sufficient to show his acceptance of the proposition.

4. ———: ———: ———: ———: **In Writing.** An acceptance in writing of the proposition contained in a letter, which set forth the same verbal agreement under which plaintiff had been at work for some time, was not necessary to his suit for fraud and deceit growing out of defendant's failure to keep the contract. Acting upon it and doing the things it stipulated was a sufficient acceptance.

5. **FRAUD AND DECEIT: Receipt.** Fraud vitiates the most formal documents. Receipts though expressing to be in full of all demands have no contractual elements, but may be explained by parol, and are at most only prima-facie evidence of the facts therein stated.

6. ———: ———: **Varying Written Contract.** In a suit for fraud and deceit, evidence to vary the terms of the written receipt, obtained by fraudulent representations as to the amount due the maker, is competent; and the rule that parol evidence is not admissible to vary the terms of a written contract has no application in such case. Evidence that plaintiff, who was to receive one-half of all commissions received by defendant for sale of land, entered upon a compromise agreement to accept $2,500 as a settlement of his share of the commissions in ignorance of the fact that defendant had received $12,500, and that defendant had sedulously concealed from him that he was receiving that amount, and letters between him and the vendors tending to establish the concealment, are competent evidence.

7. ———: **Commissions: Kindred Judgment.** The rights of a party to the suit on trial could not have been adjudicated by a judgment in another to which he was not a party, even though that judgment grew out of the same matters brought into litigation in this. Defendant was agent for the sale of a large tract of land, and proposed to give plaintiff one-half the commissions received by him for any sale to persons plaintiff would produce, and that the net cash price was to be $80,000. Plaintiff produced the purchasers at that price, and received $2,500 for his share of the commissions. Afterwards it developed that defendant had received $12,500 in commissions, and the purchasers sued defendant in the Federal court and obtained judgment for $9,000, based on the representations by plaintiff to them that neither he nor defendant was to receive any commissions if the land was sold for $80,000; but plaintiff was not a party to that suit, in which he testified, as he did in this, that those representations were the same that defendant had made to him. *Held*, that the trial court committed no error in excluding the judgment in that case, and that judgment did not bar his right to recover the full half of $12,500 received by defendant, although the defendant pleaded his testimony in that case as a bar to this and as being false.

8. ———: **Submitting Issues to Jury: Shifting Position.** Where the court gave to the jury an instruction for defendant which submitted the identical question which he now claims was a question of law for the court, he is bound by that action, and cannot now shift his position and convict the trial court of error because it adopted his theory of the case.

Appeal from Boone Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*Pearson & Pearson, E. W. Hinton* and *C. J. Walker* for appellant.

(1) The petition does not state a cause of action. (a) It alleges there was a settlement in full by defendant, of the contract made by him with plaintiff. (b) There is no contract set out or pleaded in either count of plaintiff's petition. A contract, to form the basis of a cause of action, must be pleaded, or set out, either in the language of the contract, or stated according to its legal effect. Pye v. Rudder, 7 Mo. 548; Hill v. Barrett, 14 B. Mon. (Ky.) 83; Muldro v. Caldwell, 7 Mo. 563; Moore & Hunt v. Platte County, 8 Mo. 472; Jones v. Louderman, 39 Mo. 287; Page v. Freeman, 19 Mo. 421; Langford v. Sanger, 40 Mo. 165; Garrison v. Transfer Co., 94 Mo. 138; Blaine v. Knapp Co., 140 Mo. 247; Whitemore v. Crouch, 150 Mo. 681; Anderson v. Gaines, 156 Mo. 669; Long Bros. v. Armsby Co., 43 Mo. App. 261; Currell v. Railroad, 97 Mo. App. 98. First. The letter alleged to be attached to the petition is not a part of the petition, and cannot be examined or considered, in determining the sufficiency of the pleadings. Vaughan v. Daniels, 98 Mo. 234; Pomeroy v. Fullerton, 113 Mo. 453; Poulson v. Collier, 18 Mo. App. 605; Merrill v. Central Trust Co., 46 Mo. App. 242; Chambers v. Carthel, 35 Mo. 375; Phillips v. Evans, 64 Mo. 22; State v. Samuels, 28 Mo. App. 652. Second. There is not only no proposition set out in the petition, but there is no acceptance pleaded, if the contents of the letter was known or disclosed. The rule of law is well settled that an acceptance, to close a contract on a proposition and bind the parties, must be absolute, unambiguous, unequivocal, and in

exact accordance with the offer. It must not vary from the offer, either by way of omission, addition or alteration. If it does, neither party is bound. Scott v. Davis, 141 Mo. 225; Greene v. Cole, 103 Mo. 76; Taylor v. Von Schrader, 107 Mo. 225; Arnold v. Cason, 95 Mo. App. 437. An uncommunicated intention to accept a proposition does not form a binding contract. Cangass v. Mfg. Co., 37 Mo. App. 307; Coleman v. Roberts, 1 Mo. 101; Bruner v. Wheaton, 46 Mo. 366; Lee v. Dood, 20 Mo. App. 284. (c) There is no statement in the petition of any obligation on the part of either plaintiff or defendant to either one or the other; neither is there such a statement of facts that any such obligations can be inferred. (d) There is no averment in the petition that plaintiff kept or performed any or all of the conditions and provisions of the contract to be kept and performed on his part; or that he tendered the performance of same; and that defendant failed to perform the same on his part. Plaintiff should allege and prove a substantial compliance with the provisions of the contract on his part, and a breach of the same on the part of the defendant, to entitle him to recover. Dubbins v. Edmonds, 18 Mo. App. 314; Fairbanks v. Delissa, 36 Mo. App. 719; Beckman v. Ins. Co., 49 Mo. App. 607; Basye v. Ambrose, 32 Mo. 484. (2) There is no evidence to support the verdict on either count of the petition; and, for this reason, the cause should never have been submitted to the jury. There is absolutely no proof that the proposition in the letter of January 30, 1902, was accepted by the plaintiff; and, there was, therefore, no proof of a contract. (3) The court committed error in the admission of testimony offered on the part of plaintiff, which tended to vary and changed the terms of the alleged written contract. (4) The court committed error in the rejection of legal and competent testimony offered by defendant. In particular, the opinion of the judge and

the judgment of the United States Circuit Court, in the case of The Pike County Land Co. v. A. M. Walker. (5) The court committed error in giving instructions one, two, three, four and five, asked by plaintiff. (a) It is the duty of the court to ascertain and interpret the meaning and legal effect of a written instrument; and this duty cannot be shifted by the court to the jury in the shape of questions of fact. State to use v. Lefaivre, 53 Mo. 471; Ford v. Dyer, 148 Mo. 541; Chapman v. Railroad, 114 Mo. 551; Edwards v. Smith, Admr., 63 Mo. 127; Fruin v. Railroad, 89 Mo. 404; Matthews v. Donahy, 26 Mo. App. 661; State to use v. Donnelly, 9 Mo. App. 526; Falls Wire Man. Co. v. Broaderick, 12 Mo. App. 385; Brooks v. Ins. Co., 11 Mo. App. 350; Fugate v. Carter, 6 Mo. 273. (b) What will amount to an acceptance of a proposal, and constitute a contract between the parties, is a question of law for the court. Lancaster v. Elliott, 28 Mo. App. 92; Wheaton v. Aimes, 28 Mo. App. 248; Falls Wire Mfg. Co. v. Broaderick, 12 Mo. App. 385; James & Son v. Fruit Jar Bottle Co., 69 Mo. App. 213. In both instructions, number one, and number two, the court put it up to the jury to determine whether the acceptance pleaded was unequivocal, unconditional, and without any variance between it and the proposal. Strange v. Crowley, 91 Mo. 294; Taylor v. Von Schraeder, 107 Mo. 225; Cangass v. Mfg. Co., 37 Mo. App. 307; Lungstrass v. Ins. Co., 48 Mo. 204.

*Matson & May* and *N. T. Gentry* for respondent.

(1) The petition more than states a cause of action, and portions of it might be left for the reply. "The contract not being the foundation of an action for false representations and deceit, need not be pleaded as if the action was based thereon, but so much should be set forth as will describe the wrong sought to be redressed." 8 Am. and Eng. En. of Pleadings,

909; Lambert v. Jones, 91 Mo. App. 288; Corder v. O'Neil, 75 S. W. 764; Sallee v. McMurry, 113 Mo. App. 253. "If debtor fraudulently induces creditor to accept less than full amount due, suit at law will be maintained for the balance." 14 Am. and Eng. Ency. Law (2 Ed.), 187 and 188, and cases cited in note 5 on page 147; Parker v. Marquis, 64 Mo. 38; Nauman v. Oberle, 90 Mo. 666. "Acquittances and releases upon fraudulent representations are invalid." Houts v. Shepherd, 79 Mo. 141; Winter, etc., v. Railroad, 160 Mo. 189; Hamlin v. Able, 120 Mo. 189; Hunt v. Searcy, 167 Mo. 174. "Part payment constitutes no defense to payment of balance due, and you need not tender back amount paid." Goodson v. Accident Assn., 91 Mo. App. 351; Willis v. Gammill, 67 Mo. 730; sec. 624, R. S. 1899. (2) The evidence shows conclusively an acceptance, work thereunder, and the successful results to appellant. Ensworth v. King, 50 Mo. 477; Fisher Leaf Co. v. Whipple, 51 Mo. App. 181. Acceptance was clearly pleaded and proven in this case. American Publishing, etc., Co. v. Walker, 87 Mo. App. 503; Hauck Clothing Co. v. Sharp, 83 Mo. App. 390; Arnold v. Cason, 95 Mo. App. 426; Stewart v. Glenn, Admr., 58 Mo. 589. (3) The court did not commit an error in the giving of instructions. St. Joseph Union Depot Co. v. Railroad, 131 Mo. 311; Houts v. Shepherd, 79 Mo. 141; sec. 2063, R. S. 1899. (4) Plaintiff, in reply, may allege fraud in obtaining release, set up in answer. Sec. 654, R. S. 1899; Cardwell v. Stewart, 91 Mo. App. 595; Courtney v. Blackwell, 150 Mo. 278; Hancock v. Blackwell, 139 Mo. 453; Ireland v. Spickard, 95 Mo. App. 53.

GANTT, J.—This is an appeal from the judgment of the circuit court of Boone county in favor of the plaintiff for $4,850. The action was one for damages for fraud and deceit growing out of certain contracts between the defendant and W. G. Sawyer for commissions on the sale of real estate. Since the commence-

ment of this action, W. G. Sawyer has died testate and Calista T. Sawyer has been substituted as his administratrix.

At the very threshold we are confronted with a motion to dismiss the appeal on the ground of the insufficiency of the abstract filed by the appellant in the cause. Owing to the fact that this motion was not filed until three days after the cause was set down for argument in this court, and was only brought to the attention of this court on the day the cause was argued, the motion was taken with the cause and the matters therein assigned can best be disposed of in the consideration of the case.

The petition in substance alleges that in November, 1901, while the plaintiff was a resident of the State of Minnesota, he met the defendant in Pike county, Missouri, and was informed by the defendant that he was a real estate agent and had various tracts of land and farms in the States of Missouri and Illinois for sale, and thereupon negotiations were had between plaintiff and defendant whereby defendant agreed with plaintiff that if plaintiff would furnish defendant a customer or customers for any lands the defendant had for sale in said States, defendant would divide equally with plaintiff any commissions received for such sales at the time the deals were closed. This contract was reduced to writing in January, 1902. That in pursuance of said contract, plaintiff began negotiations with various parties to make sales of the land situated in Pike county, Missouri, of which the defendant was the agent and had the selling; that at the date of said contract, the defendant represented to the plaintiff that among other tracts of land which the defendant as agent had for sale, was one containing 6,760 acres, known as the Block land or tract, situated in the county of Pike, maps of which said land and advertising matter showing its position were shown by defendant to

plaintiff, and defendant represented to plaintiff that said tract belonged to the Block Land and Farming Company, a corporation under the laws of Missouri; that defendant for the purpose of defrauding plaintiff out of his compensation deceitfully, fraudulently and falsely represented to plaintiff that he, the defendant, was only to receive as commissions and compensations for the sale of said Block tract whatever sum he could sell the same for over eighty thousand dollars, whereas in truth and in fact he was to and did receive his commission for such sale all over sixty-seven thousand five hundred dollars, and the said tract was sold for eighty thousand dollars; that plaintiff believed and acted upon said deceitful and false representations so made by defendant to the plaintiff and so believing and relying upon said representation and pursuant to and in carrying out in good faith his contract with the plaintiff in obtaining a purchaser therefor, plaintiff induced among others Charles C. Weber and Elbert L. Carpenter, residents of the State of Minnesota, to negotiate with the defendant for the purchase of the Block tract of land, and on the 15th day of February, 1902, said Weber and Carpenter contracted for the purchase of said Block tract for the sum of $80,000, through the instrumentality of plaintiff, with defendant as agent in charge of said land, and entered into a written contract for said sale, which was marked "Exhibit B" and filed with the petition; that at said time both said Weber and Carpenter were financially able and willing to purchase said land at the cash price of $80,000, and afterwards, to-wit, on the 28th day of February, 1902, did pay or cause to be paid said sum of eighty thousand dollars to the Block Land and Farming Company for said land; that in pursuance of a secret understanding and agreement between the defendant and the said Block Land and Farming Company, the defendant was to and did on

the said 28th day of February, 1902, receive as his compensation and commission for the making of said sale, the sum of twelve thousand five hundred dollars; that plaintiff was then and there entitled to one-half of said commission so received by defendant for the making of said sale, but that the receipt of said twelve thousand five hundred dollars by defendant was without the knowledge of plaintiff, and was not known by plaintiff until sometime thereafter, and that immediately upon discovery of such payment to and receipt by defendant, plaintiff demanded his just proportion thereof and employed attorneys to recover what he had been so defrauded of by defendant. That said sale was consummated in the city of St. Louis, and plaintiff was not present, but soon afterwards the defendant knowingly, willingly, deceitfully and fraudulently represented to plaintiff that he did not receive any compensation or commission for making said sale, and plaintiff being ignorant of the true facts and acting upon the said false and deceitful statement made by defendant as last aforesaid, agreed to accept of defendant for plaintiff's services, one thousand five hundred dollars in cash and an additional sum of one thousand dollars to be paid plaintiff at a future date, and that while plaintiff was still ignorant of the true facts, to-wit, on the third day of April, 1902, and while still believing and relying upon said deceitful representations, plaintiff received from defendant the said additional one thousand dollars and receipted to defendant in full for his compensation and commission. Wherefore, plaintiff alleges that he has suffered loss and been damaged by the defendant in the sum of $3,750, for which he asks judgment and for costs.

For another and second cause of action, plaintiff alleges the same contract for commissions set forth in the first count made with the defendant about the 30th

of January, 1902, and then alleges that the defendant represented to the plaintiff that he, the defendant, as agent had for sale another farm known as the Hart farm in Pike county, Missouri, said to contain 1,140 acres, which belonged to one Albert Bartlett of St. Joseph, Missouri; that defendant for the purpose of defrauding plaintiff, falsely, deceitfully, and fraudulently represented that he, the defendant, was to receive as commission for the sale of said Hart tract all that it could be sold for over twenty-three thousand dollars, when in truth and fact defendant had an agreement with Bartlett to receive as his compensation all that he could sell said farm for over and above twenty thousand dollars; that plaintiff was ignorant of the true agreement between Bartlett and defendant, and believed and relied upon said representation and in carrying out in good faith his part of contract between him and defendant, induced one R. C. Jefferson of the State of Minnesota, who was and is financially able to buy said Hart tract, and brought said Jefferson as a customer for said tract to the defendant and by virtue of plaintiff's acts, the defendant as agent for Bartlett, on the first day of April, 1902, sold said Hart tract to said Jefferson for twenty-three thousand eight hundred dollars cash; that defendant's true commission for said sale was three thousand eight hundred dollars, but defendant knowingly, falsely and fraudulently and for the purpose of defrauding and deceiving plaintiff represented to plaintiff that defendant only received as his commission on account of said Hart land sale, one thousand eight hundred dollars, and acting upon said representation, plaintiff settled with defendant upon that basis; that at said time, plaintiff was rightfully entitled to have been paid by defendant one thousand nine hundred dollars, one-half of the commission received by said defendant on account of said sale; that defendant only paid plaintiff eight hundred dollars,

and practicing the deception and frauds afore-said upon plaintiff, and plaintiff relying upon said false representations receipted in full to defendant for the commissions so due him about the third day of April, 1902. Wherefore plaintiff said he was damaged in the sum of one thousand one hundred dollars, and prays judgment in the aggregate on both counts for $5,850 and interest.

For answer the defendant filed first a general denial to each count and for further and separate answer defendant admitted that on the 15th of February, 1902, he was an agent of the Block Land and Farming Company, and had said Block tract of land for sale, and that on or about the 9th of January, 1902, he contracted with the plaintiff that if plaintiff would furnish him a customer who would purchase said tract at and for eighty thousand dollars in cash, he would give plaintiff two thousand five hundred dollars in cash in full for his commission for his services. He admits that plaintiff did introduce to defendant said Weber and Carpenter, who did on the 15th of February, 1902, enter into a contract with defendant as agent of the Block Land and Farming Company to purchase said land for eighty thousand dollars, and at the same time, requested and gave defendant an option to take a ten-thousand dollar interest in a corporation which they intended to organize, and give the defendant the exclusive sale of said land for a term of three years, which option defendant complied with and accepted in writing, and thereupon he immediately informed the plaintiff that he could not pay him the agreed sum of twenty-five hundred dollars in cash from said sale, and he would have to relinquish his claim on defendant for such sum and take a less sum, to-wit, fifteen hundred dollars, for his services and commission and one thousand dollars additional on the sale of another piece of property on certain conditions

and that plaintiff agreed to the said change and modification of his contract with defendant and said modification was reduced to writing and signed by defendant and plaintiff, and is marked "Exhibit A" filed with defendant's answer. Defendant further states that he paid plaintiff the fifteen hundred dollars and afterwards on the 3d of April, 1902, defendant settled with plaintiff and paid him in full for all services, and received from plaintiff a receipt in full, which receipt is attached to the answer and marked "Exhibit B." Defendant further answering states that plaintiff in negotiating the sale of the said Block tract, fraudulently and falsely represented to the purchasers that eighty thousand dollars was the net cash price to the owners, and that in selling said tract at that price neither plaintiff nor defendant would receive any commission and neither of them would be reimbursed for bringing about this sale and purchase; that such representations were false, fraudulent and unwarranted and known to be so by the plaintiff, because at the time of making them, plaintiff had a contract with defendant to receive the sum of twenty-five hundred dollars as a commission for the sale of said tract for eighty thousand dollars. Defendant further states that he did consummate the sale of said Block tract upon the conditions above set forth to said Weber and Carpenter, who afterwards promoted and organized the Pike County Land Company, a corporation, to manage, operate and control said land; that defendant was paid by the Block Land and Farming Company twelve thousand five hundred dollars as commission for making such sale; that out of this sum defendant paid plaintiff the amount and sums of money contracted to be paid to him as above set forth; that afterwards the plaintiff informed the purchasers of the amount of the commissions defendant received and urged them to institute proceedings against defendant

to recover said commissions, which the said Weber and Carpenter did do by an action in the United States Circuit Court for the Northern Division of the Eastern District of Missouri, in which said suit the said plaintiff recovered a judgment against the defendant for nine thousand dollars, being the total amount of the commissions received by the defendant from the said Block Land and Farming Company, less thirty-five hundred dollars which he had expended in attempting to bring about the sale of said tract of land, and in said suit plaintiff testified that neither he nor defendant was to receive any commission if the said land was sold for eighty thousand dollars cash, and defendant now pleads plaintiff's testimony as a bar to any right of the plaintiff to recover in this case.

Defendant further answering says that as agent for the owner, he had the Hart farm owned by Albert L. Bartlett, for sale as agent; that about the 9th of January, 1902, he did enter into a written agreement with the plaintiff that if he would furnish him a customer for said farm for twenty-five thousand dollars or more, he would give him for his services one-half of all they should receive for said farm over and above twenty-three thousand dollars, and afterwards, on the 28th of February, 1902, plaintiff and defendant changed and modified said agreement whereby the defendant, in consideration of plaintiff agreeing to take a less consideration than previously agreed upon in the sale of the Block tract of land, would give plaintiff one thousand dollars in addition to commission already agreed upon for the sale of the Hart farm; that plaintiff did furnish a purchaser for said farm, but that before buying the same, the said purchaser, R. C. Jefferson, insisted that the personal property then on the farm, appraised at fourteen hundred dollars, should be included in the sale of the farm at and for the price of twenty-five thousand dollars in cash, and that plaintiff

contracted for the sale of said farm to include the said personal property for the sum of twenty-five thousand dollars, and assumed the responsibility of buying and paying the fourteen hundred dollars for said personal property. Defendant says defendant paid to plaintiff and plaintiff accepted and received from defendant and in full discharge of said agreement and of all commissions due and owing the plaintiff from the defendant arising from the sale of both the Block land and the Hart farm, fifteen hundred dollars, on the 28th of February, 1902, and twelve hundred dollars to A. L. Bartlett for said personal property and a balance of eighteen hundred dollars on the third day of April, 1902, and executed and gave his receipt in full for the same, whereby defendant was released from any and all obligations under and above his said agreement to pay plaintiff commissions for the sale of the said Block land and Hart farm.

For reply the plaintiff first denied all the new matter contained in the answer. In a general way he then admits the receipt of thirty-three hundred dollars from the defendant as evidenced by the two receipts "Exhibit A" and "Exhibit B" given by him to defendant and alleges that he had given defendant credit in his petition for said sums and then alleged that plaintiff's signature and execution of the said receipts was obtained and said originals were agreed to by him upon the false, fraudulent and wilfully deceitful representations, knowingly made to him by defendant, that the amounts named therein were all the sums due plaintiff by defendant as his share of the commissions growing out of said sales and said instruments were obtained as stated in plaintiff's petition by fraudulent representations intentionally and knowingly made by defendant and acted upon by the plaintiff, plaintiff believing and relying upon said false and fraudulent representations and that said receipts and so-called compromise agree-

ment having been so fraudulently obtained are void and do not state the true agreement between plaintiff and defendant and constitute no valid release or discharge of plaintiff's cause of action.

In addition to the admissions made in the answer of the defendant the evidence tended to show that the defendant was a resident of Louisiana, Missouri, and the plaintiff on the 4th of December, 1901, was a traveling commercial agent. On the day last mentioned the plaintiff and the defendant met each other while riding on the Burlington railroad. The defendant had been down to Annada with a man to show him a farm, spoken of in the pleadings and the evidence as the Hart farm, with the purpose of selling it to him. The defendant attracted the attention of the plaintiff by his praises of the said Hart farm and other tracts of land which he had for sale. After some conversation in regard to the properties which defendant had for sale, the plaintiff, on an invitation of the defendant, went to the defendant's office in Louisiana, Missouri, and the defendant then described to plaintiff the Block and the Hart tracts of land and gave him, plaintiff, plats, circulars and prices in reference to the same. While plaintiff was a traveling salesman for a Harvesting Company at a salary of eighteen hundred dollars per year, he also had made some land deals for some wealthy citizens living in Minneapolis and St. Paul, and had been requested by some of his friends there to keep his eyes open for a good land trade. The plaintiff was so favorably impressed with the description of the said Block and Hart farms, that he told the defendant that he believed he could sell the said farms, and the defendant thereupon offered the plaintiff inducements to quit his occupation as a traveling salesman and go out as agent of the defendant in the real estate business, promising to divide equally with the plaintiff any commissions

which he might receive on account of any sales to any customers which plaintiff might bring or send to him for real estate which defendant had for sale. Upon the faith of this agreement, plaintiff began looking up purchasers, for said farms, and sometime thereafter brought the parties, Carpenter and Weber and Jefferson, to the defendant, and these parties subsequently bought the said tracts of land through the defendant of the owners thereof. The purchasers of the Block tract, Carpenter and Weber, paid eighty thousand dollars therefor, and Jefferson paid twenty-three thousand eight hundred dollars for the Hart tract. The agreement of the defendant with the owners of the Block tract was that he was to receive all he could sell the land for above sixty-seven thousand five hundred dollars net to the Block Land and Farming Company; he was, however, to pay all expenses whatsoever, and receive nothing in the event that he made no sale. The agreement with Mr. Bartlett, the owner of the Hart tract, was that defendant should have as commission all that he could sell the land for over and above twenty thousand dollars. About the first of April, 1902, defendant sold the land to Jefferson and received a draft for twenty-five thousand dollars, which he turned over to Bartlett, but Bartlett testified that he was only to have twenty thousand dollars of it. Bartlett testified that he sold the personal property on the farm to Jefferson for fourteen hundred dollars, and that the defendant gave him a check for fourteen hundred dollars. Bartlett thereupon gave the defendant five thousand dollars, and thereupon the defendant gave back a check for fourteen hundred dollars. Bartlett testified that Walker said that he was to divide commissions with the plaintiff Sawyer, but whether that was to be an equal division or not he did not know, but defendant requested him not to tell anybody exactly what the place was

costing him. "After the trade was made, he gave him a draft for twenty-five thousand dollars, and asked me if I would not give him a draft for five thousand dollars, and I told him yes; he said he wanted to make a settlement with Sawyer. We went to the defendant's office and he asked me to write two checks, one for two thousand dollars and the other for three thousand dollars; he said he kept two bank accounts and wanted to divide the deposits. He said he divided commissions with Sawyer." Jefferson said in his testimony as to the purchase of the Hart farm, he made a proposition to give twenty-five thousand dollars even cash for the farm and the personal property on it. They went down to the farm, and there was more personal property than the defendant and the plaintiff thought there was and they objected to throwing that into the trade, the personal property having inventoried at fourteen hundred dollars. When this hitch occurred in the trade, Jefferson gave his check to Walker for two hundred dollars, and thereupon Walker gave Bartlett his check for fourteen hundred dollars. Thus it appears upon Jefferson's theory that Jefferson gave twenty-three thousand dollars for the farm, and twelve hundred dollars for the personal property, and it thus clearly appears that the defendant's commission on that trade was in fact thirty-eight hundred dollars.

There was evidence tending to show that the defendant at all times represented to the purchasers of the Block land that the owners of that tract required eighty thousand dollars cash net as the price thereof, and that the defendant never disclosed to the plaintiff that he had a contract by which if he sold it for eighty thousand dollars he was to get twelve thousand five hundred dollars commission. A letter dated Louisiana, February 21, 1902, from defendant to W. A. Block, is in these words:

"Dear Sir:—I have your agreement this a. m., and I believe I can put the deal through, but what I want is consideration of sale, eighty thousand dollars, so that I can show it to the purchaser. Then we can have our private arrangements as to what you are to pay me, which is none of their concern. I cannot show them your letter as it is, because they would think I was getting too much out of it, and would make a big kick. So please send me an exact copy of the letter I received this a. m. with the exception of the consideration, and make that consideration eighty thousand dollars, and accompany it with another letter saying if I sell it at eighty thousand dollars net you will pay me twelve thousand five hundred dollars commission. In that shape, I can handle it; otherwise, I am handicapped to such an extent that I can do nothing.

"Yours truly, A. M. WALKER."

In accordance with this request Block wrote the following two letters to the defendant:

"St. Louis, Mo., Feby. 22, 1902.

"A. M. Walker, Esq.,

"Louisiana, Mo.

"Dear Sir:—Your favor of the 21, and 22, inst. were received and in reply I beg to state that if the sale of the B. L. & F. C. land is completed, we are willing to pay you the amount we may receive in excess of sixty-seven thousand five hundred dollars (67,500) net. It is understood that in case the sale should not be completed on account of whatsoever cause or reason, neither we, nor any of us, nor the B. L. & F. Co. shall be held liable or responsible in any manner, way or shape. This offer is good until March 1st, 1902, and void thereafter.

"Yours very truly, WM. A. BLOCK."

The other letter dated as of February 20, 1902, is as follows:

"Mr. A. M. Walker,

"Louisiana, Mo.

"Dear Sir:—My brothers and I agree to sell you or your assigns the B. L. & F. Co. land in Pike county, Mo., for eighty thousand dollars ($80,000) net cash money to be paid in St. Louis upon our delivering deed for the property. It is understood that if any title to any part of said property should be found to be defective in any way, you will perfect the same without cost to us. We also reserve the right to remove our personal property within sixty days, also that all contracts, agreements and leases now in force shall be binding on you in our stead. Contract of sale to date from date of deed. This agreement is good until March 1, 1902, and void thereafter.

"Yours truly,        WM. A. BLOCK."

The compromise agreement alluded to in the pleadings and evidence was dated February 28, 1902, and was as follows:

"Owing to a compromise agreement as to the amount of the commission to be paid W. G. Sawyer by A. M. Walker on account of the sale of the Block farm, whereby said commission is to be fifteen hundred dollars cash instead of twenty-five hundred dollars as previously agreed. However it is agreed if sale of the Hart farm can be made to any customer furnished by said Sawyer for twenty-five thousand dollars or more between now and March 16, 1902, or at any time when said farm can be bought at the price it is now offered at, the said Walker agrees to pay said Sawyer one thousand dollars in addition to the commission already agreed upon for such sale, and it is further agreed that if before incorporation of a company to handle said Block farm said Walker should sell his interest in said farm for ten thousand dollars, or more; the said Walker agrees to pay to said Sawyer one thousand dollars in

cash at the time of such sale, or if said Walker should sell said interest within four years for twelve thousand dollars or more, the said Sawyer is to receive the sum of one thousand dollars as full consideration of said commission.'' Signed, by both A. M. Walker and W. G. Sawyer.

The testimony on the part of the plaintiff also tended to show that the contract between Weber and Carpenter and the defendant for the sale of the Block land, was entered into on the 15th of February, 1902, for the price of eighty thousand dollars, and Carpenter testified that Walker always assured him that there was nothing in it for him at that price, and then it was agreed that Walker should take ten thousand dollars of the stock of the company that was to be formed, and he should have a contract to resell the land within two years and the exclusive right to sell the land. That agreement, however, was modified so that Walker should subscribe for only five thousand dollars of the stock. On the Bartlett tract of land there were letters of the defendant to Bartlett offered and read in evidence, one dated March 19, 1902, in which the defendant among other things says to Bartlett, ''Do not let anyone know what I am getting out of it, except the banker, and of course he will have to know. I am dividing with some other real estate agents on all over twenty-two thousand dollars, and they are under the impression that that is what it is costing me, and I want them to keep on thinking that.''

In the letter of October 9, 1902, the defendant writes as follows:

''A. L. Bartlett,

''St. Joseph, Mo.

''Dear Sir:—Yours to hand and in reply will say that Sawyer is claiming that I agreed to pay him one-half of the commission received on the sale of the Hart

farm and also the Block farm which is just north of
Louisiana; and I claim that I agreed to pay him a spec-
ified sum.  If you remember, I had you give me the
checks, one of three thousand dollars and the other of
two thousand dollars and told you that the three thou-
sand dollar check was the only one Sawyer was inter-
ested in and expected to turn it over to him, out of
which he was to pay for twelve hundred dollars worth
of personal property which he had included in the sale
of the farm to Jefferson for twenty-five thousand dol-
lars.  Sawyer thought best for me to close the matter
up with you so Jefferson gave me two hundred dollars
in cash for the balance of the personal property and I
then gave you a check for fourteen hundred dollars and
gave Sawyer my check for eighteen hundred dollars,
which will leave me clear in the deal two thousand dol-
lars.  Sawyer was claiming a one thousand dollar bal-
ance due him at that time on account of the sale of the
other farm.  So I told him in order to wipe that out, he
would have all over twenty-two thousand dollars he
could sell the Hart farm for, and as he was dead sure
that Jefferson would take it, he agreed to that, but when
Jefferson made him an offer it was as follows: 'I will
take the farm at twenty-five thousand dollars if you
will put in all the personal property which is on the
farm.'  Sawyer thought it was the best he could do, so
he accepted it, and I guess if Jefferson had insisted
upon it Sawyer would have had to pay for it all, even if
it had taken all of his three thousand dollar margin.
My attorney, Mr. Ras L. Pearson, will call on you very
early to-morrow a. m. and go over the whole matter
with you.            "Yours truly,
                              "A. M. WALKER."

    Plaintiff further testified that at the time he made
the compromise agreement with the defendant, he did
not know that defendant was to receive the twelve
thousand five hundred dollar commission from the

Block company and that prior to that time he had already brought Weber and Carpenter to the attention of the defendant and had been trying to sell them the property, nor did he know of the agreement with Bartlett that defendant was to have all over and above twenty thousand dollars for the Hart tract, and that he had practically earned this one-half of the commissions on those sales when he agreed to take the amount named in the compromise agreement, and that defendant had kept the true facts from him and for that reason he had entered into the agreement to take a smaller commission. On the part of the defendant, the defendant himself testified that he had the Block and Hart farms listed for sale when he first met the plaintiff. He testified that his agreement with the plaintiff to pay him half of the commissions of all tracts of land that he might sell had no reference to the Block and Hart tracts, as to which he had special contracts with the plaintiff. He testified that his original contract with plaintiff was to pay him twenty-five hundred dollars for the sale of the Block tract if the land was sold for eighty thousand dollars cash. And on the Hart farm he would give him half of all over twenty-three thousand dollars that the farm sold for. He testified that afterwards, in February, the contracts he had made with the plaintiff for the commissions on these farms were destroyed, and a substitute contract entered into between them some time in the latter part of February. He testified he could not produce the original contracts with plaintiff because they were destroyed. He also testified that the additional one thousand dollars that he was to pay the plaintiff was relinquished by the plaintiff in order to close the sale of the Block farm in consideration that defendant was to give him all over twenty-two thousand dollars he could get for the Hart farm. He also detailed at length the sale of Bartlett's tract and the pay-

ment therefor to Bartlett and the receipt of the five thousand dollars including the one thousand two hundred dollars for the personal property, in two checks, one for two thousand dollars and the other for three thousand dollars. According to his testimony, Sawyer made the sale to Jefferson of the Hart farm. On cross-examination he admitted that he received twelve thousand five hundred dollars for the sale of the Block farm. He wired Sawyer, the plaintiff, that if he had to take the ten thousand dollars worth of stock in the corporation, he could not afford to pay him the commission he had previously agreed upon. He testified further that at that time it was not his understanding that he was to get the Block tract of land for sixty thousand dollars, and that he was to receive twenty thousand dollars as his commisson, and did not so state to Mr. Goodman, the cashier of the bank at Louisiana, who had testified that the defendant told him that he had made twenty thousand dollars in that deal. He identified his signature to the various letters offered by the plaintiff and also the handwriting of Mr. Block to the letters received by him from Block, and stated those letters were true copies of the letters he had received. He testified that he had had the Block farm for sale for several years for sixty thousand dollars, but when he began to talk to Block about eighty thousand dollars the latter shoved his pegs up to sixty seven thousand five hundred dollars instead of sixty thousand dollars. He denied ever sending the telegram to plaintiff that he could not get the land for less than eighty thousand dollars and therefore could not pay him but half of what he had agreed to pay him before. And also denied telling Bartlett why he wanted the five thousand dollars divided into two checks. He never had any other real estate agent in Minneapolis except the plaintiff in these deals. In reply to the question, "This so-called modified agree-

ment dated February 28, 1902, was written after Mr. Sawyer had earned his money?" he answered, "It was reduced to writing after the deal was closed, but it was agreed on before. I did not tell plaintiff at that time that I had received from the Block deal twelve thousand, five hundred dollars for the reason it was none of his business. I never did tell him in the world." He denied telling Weber that eighty thousand dollars was the net price to Mr. Block that the land could be sold for; I told him that I was not making a fortune out of the land.

The defendant offered in evidence the judgment of the Pike County Land Company against A. M. Walker, defendant, in the United States Circuit Court for the Northern Division of the Eastern Judicial District of Missouri, which was objected to by plaintiff for the reason that the plaintiff was no party to that suit and no party to this proceeding or had anything to do with it; defendant could not take money due to plaintiff and invest it in any way by which he might cause a judgment to be entered against him in favor of any parties to those suits. Which objection was sustained.

In rebuttal the plaintiff also offered evidence tending to show that the defendant's reputation for truth and veracity in the county in which he lived was bad and the defendant also offered evidence tending to show that his reputation in that respect was good.

The instructions will be noted in the course of the opinion.

I. The first ground upon which defendant relies to reverse the judgment of the circuit court is that the petition does not state a cause of action. Under this head the petition is assailed, first, on the ground that it alleges that there was a settlement in full by the defendant of the contract made by him with the plaintiff. But we think it is clear that this objection to the petition is without merit. While the plaintiff pleads that

he received three thousand three hundred dollars from the defendant and receipted him therefor, he alleges that said pretended settlement and receipts were obtained from him by defendant by the deceitful, fraudulent and false representations of the defendant that he was only to receive as commission a compensation for the sale of the Block tract all he could sell the same for over eighty thousand dollars and of the Hart tract all he could sell it for over twenty-three thousand dollars, and that plaintiff believed and acted upon these false and fraudulent representations in making said settlement with the defendant. If, as plaintiff alleges, the said receipts were obtained from him by means of the fraudulent representations of the defendant, and he was induced to accept said three thousand three hundred dollars in full of his one-half of the commission, which he alleges he was entitled to and had earned under his contract with the defendant, the acceptance of the three thousand, three hundred dollars and his receipts therefor, were no bar to his action for the balance due him.

II. It is next insisted that the petition is bad because there was no contract set out or pleaded in either count of plaintiff's petition. As to this point it is only necessary to say that this is an action for fraud and deceit. As was said in Corder v. O'Neill, 176 Mo. l. c. 437, "This is not an action to enforce the verbal contract referred to in the petition, nor is it an action for the breach of it." But is an action for fraud and deceit. The petition sufficiently avers the agreement between the plaintiff and the defendant by which the defendant agreed with plaintiff that if plaintiff would furnish defendant a customer or customers for any lands defendant had for sale either in Missouri or Illinois, defendant would divide equally with the plaintiff any commissions he received for such sales at the

time the deals were closed. It was perfectly competent under the other allegations to show that plaintiff in pursuance of said agreement found and brought solvent purchasers to the defendant, who did purchase said lands at and for the prices which defendant represented to plaintiff he held the said lands for sale.

As to the further objection, that the petition does not plead an acceptance by plaintiff of the propositions made to him by defendant, the petition especially avers: "That the plaintiff accepted said proposition and began negotiations with various parties to perfect sales of the land situated in Pike county, Missouri, for which the defendant was the agent in charge of and of which defendant represented to plaintiff he had the selling," etc. This was sufficient pleading of the acceptance of the proposition. It was not at all essential that plaintiff should set out the evidence in his petition by which he expected to prove his acceptance of the said proposition. But it is not necessary to dwell upon this point, as the evidence abundantly established not only by the admissions in the answer, but by the defendant's own testimony it is shown that he did accept the services of the plaintiff in making the sales of the said Block and Hart tracts of land, and that the sales were made for the price which he set upon the lands, when he employed the plaintiff to assist him in the sale thereof. The plaintiff testified that he accepted the proposition and went to work under it to procure the purchasers, and this was sufficient acceptance. [Allen v. Chouteau, 102 Mo. 309, and cases cited.]

Neither do we think there is any merit in the point made that there was no averment that the plaintiff kept or performed the provisions of the contract. The petition is amply sufficient in this respect.

Again, it is insisted that there is no evidence to support the verdict on either count of the petition.

This is based upon the contention that the proposition in the letter of January 30, 1902, was never accepted by the plaintiff, and, therefore, there was no proof of a contract. As we have already said, there was abundant evidence of the acceptance of the proposition made to plaintiff by the defendant. The letter of January 30, 1902, was shown to have simply been a reduction to writing of an agreement made not later, any way, than the 9th of December, and plaintiff's evidence was that he had been acting under that agreement in seeking purchasers for the lands for two months prior to the time it was reduced to writing in the letter of January 30, 1902. It was not at all necessary that he should make a written acceptance of the proposition contained in that letter. He had answered it in person by acting upon it, and by obtaining the purchasers for the said lands for the defendant, and that was sufficient for the purposes of this case. [Allen v. Chouteau, supra; Corder v. O'Neill, 176 Mo. 437.]

III. It is next insisted that the court erred in the admission of testimony which tended to vary and change the terms of the alleged written contract. This is an action for fraud and deceit, and a large portion of plaintiff's case consisted in showing the writings of the defendant by which he sought to bind the plaintiff to the acceptance of much less than his contract with the plaintiff entitled him to. Fraud vitiates even the most formal documents, and it is a settled law of this State that receipts though expressed to be in full of all demands have no contractual elements, but are opened to be explained by parol, and at most are only prima-facie evidence of the facts therein stated. [Aull v. Trust Company, 149 Mo. 1. c. 17; Ireland v. Spickard, 95 Mo. App. 1. c. 64.]

This objection to the testimony leaves out of view altogether the fraud pleaded in the petition and the reply to which the evidence was directed. The learning

on the subject of the admissibility of parol evidence to vary and change the terms of written contracts has no application to the issue presented by the pleadings in this case, nor do we agree with the learned counsel for the defendant that none of the exhibits, to-wit, the letters of the defendant to Block and Bartlett, have any reference to the plaintiff. The evidence shows beyond all controversy that plaintiff was the real estate agent in Minnesota to whom those letters referred. Defendant admitted that he had no other real estate agent in said State in regard to these real estate transactions. Neither did the admission in the pleadings that the Block tract was sold for eighty thousand dollars, and that the defendant received twelve thousand five hundred dollars commissions therefor, shut out the proof by the plaintiff that these facts were sedulously concealed from him and that he was rendering his services for the defendant in absolute ignorance that defendant was to receive such commission and that by the machinations of the defendant he was kept in ignorance thereof and induced to accept the three thousand three hundred dollars in lieu of his half of the commissions received by the defendant, and that he entered into the so-called compromise agreement in ignorance of the true facts. In the admission of evidence to establish fraud, the courts have always allowed the broadest latitude, and we think that the whole correspondence between these parties was clearly competent under the issues on trial.

IV.    It is next insisted that the court erred in rejecting the judgment of the United States Circuit Court in the case of the Pike County Land Company against the defendant, A. M. Walker, on the ground that the Circuit Court of the United States was induced to render the judgment that it did against the defendant upon the testimony of Weber and Carpenter, witnesses produced by the plaintiff in that case; that the

plaintiff herein, in his efforts to sell them the Block tract, represented to each of them that neither he nor Walker, the defendant herein, would get any commission or compensation as agents for the sale of the Block tract of land and that $80,000 was the net price to the owner. We think the court committed no error in excluding that record. The plaintiff in this action was not a party to that suit and his rights could not be adjudicated in an action to which he was not a party. That case was decided by Judge Adams against the defendant because of the fraud practiced by him upon his co-promoters of the Pike County Land Company. Moreover, according to plaintiff's testimony in this case the representations he made to Carpenter and Weber were those that were made to him by the defendant herein, and were the same that the defendant was shown by the same witnesses in this case to have made to them and believed by them to be true and in addition to that both Carpenter and Weber were witnesses in this case and the defendant had the full benefit of their evidence on that subject.

V. Defendant complains of the first five instructions given by the court for the plaintiff. The error assigned as to these instructions is not several, but seems to be aimed at them as a whole. It is first insisted that the court submitted to the jury whether or not the acceptance pleaded was sufficient in law to close the contract. It would serve no good purpose to set forth these instructions in full, but it is sufficient to say that on this point it was simply submitted to the jury whether the plaintiff and the defendant made an agreement that if plaintiff would furnish the defendant a customer or customers for any lands the defendant had for sale either in Missouri or Illinois defendant would divide equally with the plaintiff any commissions the defendant might receive for such sales at the time the deals

204 Sup—11

were closed. The instructions very favorably submitted the ultimate fact whether such an agreement had been made and whether plaintiff had complied with his part of said agreement and had furnished the customers for said tracts of land. Whether there was such an agreement was a matter of fact under the evidence submitted to the jury and there was no question of law as to the acceptance submitted to them, and the same may be said as to whether by the agreement it was stipulated that if plaintiff would furnish the defendant a customer or customers for any lands defendant had for sale either in Missouri or Illinois, defendant would divide equally with the plaintiff any commissions the defendant received for such sales at the time the deals were closed. Certainly defendant cannot complain that the court did not direct the jury that by the letter of January 30, 1902, and known as "Exhibit A" in the record, the defendant did make such an agreement with the plaintiff, for such were the plain terms of that instrument. Again it is complained that the court erroneously submitted to the jury as a legal proposition whether or not the Block tract was included in the terms of the written contract. Obviously there was no error on this point. The agreement was in general terms that if the plaintiff would furnish the defendant a customer or customers for any lands defendant had for sale either in Missouri or Illinois, defendant would divide equally with plaintiff any commissions he might receive for such sales at the time the deals were closed. It was a question of fact whether defendant had for sale at that time either the Block tract or the Hart tract; if he did as a matter of fact, then it was for the jury to so find and if so plaintiff was entitled to his commissions thereon. It was a sharp issue in the evidence whether these two tracts were included in the general terms of the agreement above specified or whether as defendant contended these

two tracts were excepted out of that general agreement by special contracts in which a different commission was to be allowed the plaintiff. As to the representations in regard to the price at which the defendant had the Block and Hart tracts for sale, and his representations as to what he was to receive as his commission for the sale of each, those were clearly matters of fact which were to be found by the jury as a predicate for their verdict. This objection to the instructions, we think, is entirely untenable. The instructions fairly submitted to the jury the issues of fact made by the pleadings. The authorities industriously collected by the learned counsel as to the duty of the court to interpret the meaning and legal effect of written instruments have little or no application to the issues in this case, which were questions of fraud and deceit and false representations. Moreover, the court at the request of the defendant instructed the jury that if they found from the evidence in the cause, that defendant's proposition of January 30, 1902, did not relate to, include or apply to the Block and Hart farms, and that the sale of the said tracts so far as the plaintiff and defendant were concerned was made in separate and distinct contracts, neither party at any time having agreed that such sales should be made under the said proposition of January 30, 1902, then the finding of the jury should be for the defendant on each count. And also at the request of the defendant instructed the jury that if plaintiff on or about the 9th of January, 1902, entered into a contract with the defendant by which the latter agreed to pay him the sum of two thousand five hundred dollars for finding a purchaser for the tract of land known as the Block farm and that plaintiff acted under such contract until the sale of said land to Weber and Carpenter, then the verdict on the first count should be for the defendant. Thus

submitting identically the same questions to the jury that defendant now complains were matters of law for the court alone. The defendant having submitted the case upon that theory cannot now shift his position in this court and convict the circuit court of error because it adopted his own theory of the case. This is too well settled to require the citation of authority. Again in his second instruction the defendant had the court to submit to the jury whether "the plaintiff accepted the defendant's offer of January 30, 1902, to share equally all the commissions on the sale of lands for which he furnished purchasers, and that he acted under said offer in negotiating the sale of the Block farm to Weber and Carpenter." Evidently at that time the defendant did not think this was a pure question of law for the court, but was one of fact whether the plaintiff accepted and acted upon defendant's propositon. The court also instructed for the defendant that if plaintiff, at the time he signed the so-called compromise agreement of February 28, 1902, by which he agreed to accept one thousand five hundred dollars in cash, and one thousand dollars additional conditioned upon the subsequent or second sale of the Hart farm, knew or was aware that defendant was to receive any commissions or profits from the sale of the Block farm to Weber and Carpenter, then plaintiff acted with knowledge of the facts and was not entitled to recover on the first count of the petition. This instruction was entirely in harmony with the plaintiff's instruction, because under that instruction plaintiff could only recover if he had been fraudulently deceived by defendant and was ignorant of defendant's contract for commissions on the sale of the Block and Hart farms. Under defendant's instruction if he knew of the arrangements of the defendant with the Blocks and Bartlett and then agreed to accept the new commission provided by the article of February 28, 1902, he

could not recover.  It was a question of fact for the jury to find whether he did know of defendant's contract with Block and Bartlett, or whether he was fraudulently kept in ignorance therof.

VI.  As to the contention that the admissions in the reply are a complete bar to plaintiff's recovery, a reference to that pleading will show that plaintiff simply admits the signing of the Exhibits A and B, and then alleges that his signature thereto was obtained and said originals were agreed to by him by the false, fraudulent and willfully deceitful representation knowingly made to him by the defendant that the amounts named therein were all the sums due plaintiff by the defendant as his share of the commissions out of the sale of the said Block and Hart tracts of land, and that plaintiff's receipt and the said so-called compromise agreement were fraudulently obtained as set forth in the petition and are void.  We think the allegations of the reply were ample when taken in connection with the averments of the petition, and that the record furnished abundant evidence justifying the jury in reaching the verdict which they did.

We have carefully gone through the record in this case and the evidence furnished by the defendant in his abstract of the bill of exceptions, and we find that the contention of the plaintiff that he has omitted therefrom Exhibits C and Q is well taken.  If Exhibit C was offered and read in evidence as copied in the additional abstract furnished by the plaintiff, it was a most important piece of testimony when we consider the issues on trial in this case.

The verdict of the jury in this case has received the approval of the circuit court which heard the cause and after a careful examination of the evidence in the case, we are of the opinion that the verdict is for the

right party, and that there was no reversible error committed on the trial.  The judgment is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.