NATIONAL TELEPHONE DIRECTORY COMPANY, a Corporation, Respondent, v. DAWSON MANU-FACTURING COMPANY, a Corporation, and CHASE HOTEL COMPANY, a Corporation, Appellants.*

St. Louis Court of Appeals. Opinion Filed June 13, 1924.

TRADE MARKS AND TRADE NAMES: Selling Advertising Space on False Covers Placed on Telephone Directories: Unfair Competition. An advertising company by arrangement with a telephone company had the exclusive right to the advertising space in and upon the directories of the telephone company. The directories as a result of expenditures of time and money by the advertising company became an advertising medium of great value to it. A hotel company was in possession of and used in its offices, rooms, and apartments several hundred of these directories, which the telephone company had merely bailed to it for the specific purpose of being used by it in availing itself of the telephone service for which it had subscribed. Another advertising company by arrangement with the hotel company proposed to place false backs or covers on such directories and sell advertising space to be printed on such false backs or covers, held to constitute unfair competition.

---

*Headnote 1. Trade-Marks, 38 Cyc, p. 847.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Robert W. Hall, Judge.

AFFIRMED..

*Wilson & Trueblood* for appellants.

Unfair competition consists in passing off or attempting to pass off upon the public the goods or business of one person for the goods or business of another. Nims on Unfair Competition (2 Ed.), pages 2 and 3, et seq.; Westminster Laundry Company v. Hesse Envelope Company, 174 Mo. App. 238, 156 S. W. 767; 38 Cyc. 756; Grocers Journal Co. v. Midland Pub. Co., 105 S. W. 310; Pyle Nat. Co. v. Oliver Electric Mfg. Co., 281 Fed. 632,

(C. C. A., 8th Cir. [Mo.]) ; Mfg. Co. v. Plug Co., 282 Fed. 961.

*D. D. Holmes* for respondent.

The facts pleaded in plaintiff's petition state a cause of action that brings plaintiff, in the protection of its property, well within the jurisdiction of a court of equity. Press Publishing Co. v. Levi Bros. & Co., (Nims on Unfair Competition, 558); Nims on Unfair Competition, pp. 557, 558 (also chapters 1, 2 and 19); Meccano v. Wagner, 234 Fed. 912; Searchlight Gas Co. v. Prest-o-Lite Co., 215 Fed. 692; Fonotipia, Ltd., v. Bradley, 171 Fed. 951; International News Service Co. v. The Associated Press, 248 U. S. 215; National Tel. News Co. v. Western Union Tel. Co., 56 C. C. A. 198; Fisher v. Star Co., 231 N. Y. 414; Schubach v. McDonald, 179 Mo. 163; McAlister v. Graham, 206 S. W. 393; Weinstock et al. v. Marks, 109 Cal. 529.

SUTTON, C.—The petition, filed by the plaintiff in this case on the 10th day of October, 1922, omitting caption and signature of counsel, is as follows:

"Plaintiff states that it is now and was at all the times hereinafter mentioned a corporation duly organized and authorized to do an advertising business in Missouri, with an office and place of business in the city of St. Louis; that the defendant, Dawson Manufacturing Company, is and was at all the times hereinafter mentioned a corporation duly organized and doing business in the city of St. Louis, Missouri; that the defendant, Chase Hotel Company, is a corporation duly organized and authorized to do business in the State of Missouri, and as such owns and operates the Chase Hotel and apartments.

"Plaintiff states that the Southwestern Bell Telephone Company does a general telephone business in the city of St. Louis with many thousands of subscribers and users of telephones; that said telephone company issues semiannually an alphabetical and classified list of its sub-

scribers in St. Louis and vicinity; that such book will hereinafter be referred to as the directory; that said directory goes to the subscribers of said telephone company for their use, but remains the property of said telephone company; that about 140,000 copies of the directory are distributed at each semi-annual issue thereof, and that several hundred of said directories are in use by the defendant, Chase Hotel Company, in the rooms and offices of the Chase Hotel and apartments; that for many years the plaintiff has had the publication of said directory and has owned and now owns the exclusive right to solicit and sell advertising space in and on said directory; that through the efforts of plaintiff, and as the result of the expenditure of much time and money on the part of the plaintiff, the said directory has become an advertising medium of great value, and plaintiff has established, in the selling and publishing of advertisements in and on said directory, a lucrative advertising business, having entered into contracts with great numbers of firms and individuals to insert their advertisements for a given compensation at certain specified places in or on said directory; that some of the most valuable advertising space of said directory is on the cover thereof, including the first page of the front cover and the last page of the back cover and the outside margin between said covers, known as the backbone of said directory; that plaintiff has contracts with advertisers extending over a long period of time for the spaces on the first and last pages of said cover and on the backbone of said directory, and that plaintiff has other contracts with other advertisers for preferred places on the inner pages of said directory, and that all through the classified section of said directory advertisements are inserted for valuable consideration on contract with plaintiff. Plaintiff states that all of said spaces for advertising are very valuable, and that the plaintiff has been able to enter into large numbers of such contracts with great pecuniary profit to itself and great benefit to said advertisers.

"Plaintiff states that the defendant Dawson Manufacturing Company and the defendant Chase Hotel Company have entered into an arrangement whereby the defendant Dawson Manufacturing Company is to manufacture and publish certain false backs or covers with the intention and with the understanding that said false backs or covers are to be placed upon and attached to the several hundred directories in use in the rooms and offices of Chase Hotel and apartments; that the defendant Dawson Manufacturing Company is selling advertising space and is soliciting and entering into contracts for and procuring advertisements to be printed in and on said false backs and covers, and that the defendant Chase Hotel Company proposes to advertise the business of the Chase Hotel and apartments on said false backs or covers. That plaintiff cannot state what other advertisements are to be placed upon said false back or covers or what matter other than advertisements are to be placed thereon, as said false backs and covers have not yet been published. Plaintiff states that any of the false backs or covers, if permitted to be placed upon a directory, will completely cover and render worthless the advertisements and the advertising space upon the backbone of said directory; that it will cover the advertisements upon the front and back covers of said directory and rob the advertisers who have especially contracted for this space of the preferred position for which said advertisers have contracted with the plaintiff and will destroy much of the value of the advertising space on said covers.

"Plaintiff further states that in selling advertising space and in soliciting and entering into contracts for and procuring advertisements to be placed on the said false backs and covers, and that in placing on and attaching to the directories the said false backs and covers, as is proposed by the defendants, the defendants are guilty of unlawfully interfering with and damaging the business of plaintiff, and of unlawfully depriving plaintiff of said business and the profits thereof, and of unlawfully depreciating and destroying the value of advertising

space on and in said directory, greatly to plaintiff's injury and damage, and that all of said acts of defendants collectively and separately constitute an unfair and unlawful competition with plaintiff's said business.

"That the damages which have been and will be suffered by plaintiff through the conduct of the defendants as aforesaid are of a nature and quantity which render the injury to plaintiff by reason of said damage irreparable and incapable of remedy at law.

"Wherefore, by reason of the irreparable damage, inadequacy of legal remedy, and premises aforesaid, plaintiff prays this court that it shall enjoin the defendants from soliciting, procuring or contracting for advertisements, either directly or indirectly, that are to be printed on false backs or covers, any of which false back or covers are intended to be placed upon or attached to the Southwestern Bell Telephone directories in use in the Chase Hotel and apartments, and from placing upon or attaching to, or procuring others to place upon or attach to the said directories any false backs or covers or any other device which will in any way cover or obscure any of the advertisements printed in or on said directory, or which will in any way interfere with or damage plaintiff's business of printing and publishing advertisements for a valuable consideration in or on said Southwestern Bell Telephone directories, and for such other and further relief as to the court may seem meet and proper; and that pending the determination of the issues in this case the court shall issue its temporary restraining order, temporary injunction, and such other process as to the court may seem meet and proper."

Defendants demurred to the petition on the ground that the petition does not state facts sufficient to constitute a cause of action against the defendants, or to authorize the granting of the relief prayed for. The court overruled the demurrer, and, the defendants declining to plead further, the court granted a perpetual injunction in accordance with the prayer of the petition. The defendants appeal.

Plaintiff grounds his right to invoke injunctive relief upon the law of unfair competition in business. Defendants' counsel insist that the allegations of the petition do not bring the plaintiff within the protection of that doctrine, for that, they say, that unfair competition consists in passing off or attempting to pass off upon the public the goods or business of one person as and for the goods or business of another, and that nothing less than conduct tending to pass off one person's goods or business as that of another will constitute unfair competition. [38 Cyc. 756, et seq.; Nims on Unfair Competition (2 Ed.), p. 4, et seq.] In this counsel insist upon the application of the doctrine in its narrow and technical sense as announced by the earlier decisions of the courts in England and in this country. The doctrine, as thus announced, has since, by process of growth, been greatly expanded in its scope to encompass the schemes and inventions of the modern genius bent upon reaping where he has not sown. [International News Service v. Associated Press, 248 U. S. 215; Press Publishing Co. v. Levi Bros. & Co., Nims on Unfair Competition (2 Ed.), p. 558; Meccano v. Wagner, 234 Fed. 912, l. c. 920; Searchlight Gas Co. v. Presto-O-Lite Co., 215 Fed. 692, l. c. 695; Fonotipia v. Bradley, 171 Fed. 951, l. c. 960, 961; National Tel. News Co. v. Western Union Tel. Co., 56 C. C. A. 198, l. c. 203; Fisher v. Star Co., 231 N. Y. 414, l. c. 428; Weinstock v. Marks, 109 Cal. 529, l. c. 539, 541.]

The doctrine, in its broader scope, as announced in the more recent decisions, is well exemplified in International News Service v. Associated Press, supra. In that case an incorporated association of newspaper publishers gathered news at its expense, and, without applying for copyright, telegraphed it daily to its members throughout the country, for their exclusive use in publication, they paying the assessments therefor; a rival corporation, serving other newspapers for pecuniary returns, made a practice of obtaining this news through early publications in newspapers and on bulletins of the first company's members, and of sending it by telegraph, either as so taken or in rewritten form, to

its own customers, thus enabling them to compete with the newspapers of the first company in the prompt publication of news obtained for the benefit of the latter by their exclusive agency and at their expense; and the court, granting injunctive relief, said:

"We need spend no time, however, upon the general question of property in news matter at common law, or the application of the copyright act, since it seems to us the case must turn upon the question of unfair competition in business. . . . In order to sustain the jurisdiction of equity over the controversy, we need not affirm any general and absolute property in the news as such. The rule that a court of equity concerns itself only in the protection of property rights treats any civil right of a pecuniary nature as a property right (In re Sawyer, 124 U. S. 200, 210; In re Debs, 158 U. S. 564, 593); and the right to acquire property by honest labor or the conduct of a lawful business is as much entitled to protection as the right to guard property already acquired. [Truax v. Raich, 239 U. S. 33, 37-38; Brennan v. United Hatters, 73 N. J. L. 729, 742; Barr v. Essex Trades Council, 53 N. J. Eq. 101.] It is this right that furnishes the basis of the jurisdiction in the ordinary case of unfair competition. . . . It is said that the elements of unfair competition are lacking because there is no attempt by defendant to palm off its goods as those of the complainant, characteristic of the most familiar, if not the most typical, cases of unfair competition. [Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 140.] But we cannot concede that the right to equitable relief is confined to that class of cases. In the present case the fraud upon complainant's rights is more direct and obvious. Regarding news matter as the mere material from which these two competing parties are endeavoring to make money, and treating it, therefore, as *quasi*-property for the purposes of their business because they are both selling it as such, defendant's conduct differs from the ordinary case of unfair competition in trade principally in this, that, instead of selling its own goods as those of complainant, it substitutes misappropriation

in the place of misrepresentation, and sells complainant's goods as its own.''

The case of Press Publishing Co. v. Levi Bros. & Co., supra, decided by the New York Supreme Court at Special Term in 1912, more closely resembles the present case on its facts than any other case which counsel have brought to our attention. The case is substantially reported in Nims on Unfair Competition (Second Edition), page 558, as follows:

''A merchant was enjoined from printing advertisements on sheets resembling advertising pages of the 'World,' and procuring news dealers to fold them in with copies of the 'World' and thus distribute them, even though at the top of the inserted sheet were the words: 'This publication is not a part of any newspaper.' Says STAPLETON, J.: 'The plaintiff claims that the act constitutes an unlawful interference, to its injury and damage, with its business as the publisher of a modern newspaper, the prosperity of which is so largely dependent upon the advertising feature of the enterprise.' Distinguishing the sale of a newspaper from that of ordinary goods, he says of the newspaper: 'The sale is for circulation, and that the publication be distributed in form and substance as issued, without improper or unfair addition, subtraction or defacement, is implied from the circumstances of the transaction. . . . The obvious purpose of the defendant was not alone to secure distribution of its advertising matter, but to tack such matter on to plaintiff's publication, to impress some persons with the belief that it was part of the newspaper, to trade on the favorable reputation of the plaintiff in an unfair and fraudulent manner by the use of an ingenious device which, unless the design be as suggested, is otherwise purposeless.' ''

The present case is a stronger case for equitable interference than the Press Publishing Company case, for in that case the publishing company sold its papers outright to the news dealers, whereas, in the present case the telephone company merely bailed its directories to the Chase Hotel Company for the specific purpose of

being used by it in availing itself of the telephone service for which it had subscribed.

If the defendants' scheme, as disclosed by the petition in the instant case, does not come within the narrow and technical formula of the doctrine of unfair competition, there can be no question that it comes within the broader reach of the doctrine as defined and applied by the courts in the more recent decisions. The petition discloses that the defendants purpose to pass off their own advertising medium as the advertising medium of the plaintiff, not merely by simulating the plaintiff's medium, but by actually tacking their own medium upon that of the plaintiff. By this unfair means the defendants purpose to place their advertising business in competition with that of the plaintiff. A more flagrant case of unfair competition is nowhere disclosed by the books. In fact, the scheme is more than unfair competition; it amounts to an actual appropriation of the plaintiff's property by the defendants to their own business purposes. A court of equity ought not to hesitate long to interpose its protection against a scheme of this character.

The case was rightly adjudged below, and the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J.,* and *Becker* and *Daues, JJ.,* concur.