**Clyde F. FREDERICKS (Plaintiff), Respondent,**

v.

**RED–E–GAS COMPANY, a Corporation (Defendant), Appellant.**

No. 29716.

St. Louis Court of Appeals.

Missouri.

Dec. 3, 1957.

Motion for Rehearing or to Transfer Cause to Supreme Court Denied Jan. 3, 1958.

Ziercher, Tzinberg, Human & Michenfelder, Albert A. Michenfelder, Jr., Erwin Tzinberg, Clayton, for appellant.

Detjen & Detjen, C. W. Detjen, John F. Nangle, Clayton, for respondent.

HOUSER, Commissioner.

Action by Clyde F. Fredericks, employee, against Red-E-Gas Company, employer, for breach of contract, refusal to pay commissions and salary and for wrongful discharge after working ten months under a two-year oral contract of employment. Employer appeals from a judgment of the Circuit Court of St. Louis County for $4,300 entered upon a jury verdict for employee.

The petition alleged an oral agreement between plaintiff and defendant's officers in January, 1954 to employ plaintiff as sales manager for at least two years; an assurance that the agreement would be put in writing; entry upon his duties in February, 1954; performance by plaintiff; reduction of the agreement to writing in June, 1954; worngful refusal to pay commissions according to the contract; wrongful discharge in January, 1955 and refusal to pay subsequent salaries and commissions.

The answer pleaded that plaintiff had no right of recovery under the contract because it violated the provisions of the Statute of Frauds, section 432.010 RSMo 1949, V.A.M.S.; failure of performance by plaintiff and lack of authority of the then president of the corporation to enter into any contract with plaintiff.

Defendant-appellant's first, third and fourth points relate essentially to the question whether the writing is a sufficient memorandum to remove the oral contract from the operation of the Statute of Frauds. The following is the memorandum relied upon:

"Red-E-Gas Company

"Bottle and Bulk Gas—Gas Equipment

"9000 Watson Road (Highway 66)
St. Louis County 19, Mo.
"Phone VIctor 3-4021

"February 2, 1954

"Mr. Clyde F. Fredericks,
"8663 Brookshire Dr.,
"University City 24, Missouri

"Dear Mr. Fredericks:

"I was very pleased to have you visit me the other day and was rather encouraged by your attitude and apparent cooperation.
"I have thought about the matter very carefully and discussed the details with Mr. Berry, and it is the purpose of this letter to offer you the following:

"We will pay you a salary of $85.00 per week. We will furnish you a new automobile through outright purchase or maybe one can be leased. This company will maintain the car and furnish all the gas and oil, etc., and we will pay all of your travelling and miscellaneous expenses incident to promotions and sales of the company in visiting our dealers.
"In addition to the above, the company offers you 1½% commission on all sales. Now, this includes everything except the sales of propane and butane gas. You will receive this commission of 1½% on all sales—whether the sales are made by the company direct, commonly referred to as 'house sales or over-the-counter sales' or sales made by salesmen, and all sales to dealers including wholesale and retail. I guarantee you two years work on the above arrangement. If you are not satisfied at the end of the first year, you can leave our employment by giving us two weeks notice, but if you are satisfied, we will guarantee you an additional year.
"We will pay you your salary and expense account every week but your commission will be paid during the latter part of December of each year, some time between the 1st and 20th, in a lump sum. Your title will be 'Sales Manager'. You will be in charge of all of our dealers and our salesmen. You will develop your own rules and regulations in that department and you will have complete charge of all sales. We will furnish you with an office, with all office facilities, including dictaphone.
"I know, Mr. Fredericks, that you are now the factory representative of the Hunt Heater Company and the Morrison Steel Products Company, and I know that you have a partner to contend with, and that you will probably earn more money than I am offering you but as I told you the other day, the potentials in the LP field are terrific, and I believe that before 1954 runs

around, you will be earning twice as much as you are today. This company has gone through an expansion program which has now been completed, and all we want to expand on in 1954 is the increased volume of business.

"I trust that you will give this offer every serious consideration, and discuss it with your wife and partner, and advise me at the earliest opportunity either your acceptance or your rejection.

"Trusting to hear favorably from you, with kindest regards, I am,

"Sincerely yours

"Red-E-Gas Company

"/s/ Jos. Falzone
"President."

Appellant argues that the writing is insufficient; that such memorandum must show an existing and binding contract, a meeting of the minds of the parties, a completed agreement * * * an unconditional, unequivocal acceptance in exact accord with the offer; that this memorandum does no such thing; that it is nothing more or less than an *offer*, which in terms required acceptance in a certain manner; that it was not accepted in that manner; that it does not show that plaintiff accepted the terms offered, as required by the letter, or that plaintiff went to work on those terms, and therefore the letter fails as such memorandum. Consistent with that theory appellant attacks the giving of verdict-directing Instruction No. 1 for failure to require a finding, and the refusal of requested Instruction No. A which required a finding, as a prerequisite to a verdict for plaintiff, that plaintiff accepted the offer contained in the letter by express written or verbal statement delivered to defendant.

It is true that in form and appearance the letter is naught but an offer of employment. Considered separately and apart from the circumstances it does not constitute a memorial of an acceptance of the offer or of a completed contract. In determining whether a paper writing is sufficient to satisfy the provisions of the Statute of Frauds, however, it is always permissible for the court to look to the surrounding facts and circumstances. National Refining Co. v. McDowell, Mo.Sup., 201 S.W.2d 342, and cases cited. Those circumstances convince us that the letter is a sufficient memorandum to remove the oral contract from the operation of the Statute of Frauds; that the writing is a memorial of an existing, completed contract on which the minds of the parties had met and under which the parties were operating, and that the letter was not written, dispatched or intended as an offer which might form the basis of any new contractual relationship between the parties, but expressly for the purpose of recording the terms of an existing oral contract. Plaintiff's evidence shows that in January, 1954 plaintiff and Joseph A. Falzone, president of defendant corporation, commenced negotiations looking to the employment of plaintiff by defendant. Several discussions were had, some in the presence of Mr. Berry, a vice-president of the corporation. Eventually plaintiff and Falzone reached a definite oral agreement concerning the terms of plaintiff's employment, at which time Falzone assured plaintiff that he would put the terms of their agreement in writing. Both sides agree that plaintiff went to work for defendant as its sales manager on March 1, 1954 at a salary of $85 per week and that defendant furnished plaintiff with a car, an office, a secretary and an expense account. On March 9, 1954 Falzone signed a form required by FHA verifying plaintiff's employment, in which he certified to the following information:

"Length of time employed: March 1, 1954
"Present Position: Sales Manager
"Present rate of pay: $85.00 per week plus commissions

"Approximate annual earnings from regular schedule work: $4,500.00
"Approximate annual earnings for overtime work: None

"Approximate annual commissions $3,000.00 upward

"Probability of continued employment and other remarks: Mr. Fredericks perfectly fits the position that he fills and his potential of large earnings is great and it is my opinion that he will continue in our employ for many years to come."

Plaintiff testified that on several occasions after March 1, 1954 he asked Falzone whether he had ever written out his contract; that Falzone would answer that he was "pretty busy" but that he would "get around to it very shortly." In May, 1954 Mr. Bartlesmeyer, a salesman, told Falzone that plaintiff was anxious to get his contract. Falzone answered that he was "going to get this contract" to plaintiff. Finally in June, 1954 Falzone dictated and dispatched the letter in question which was received by plaintiff in due course. The letter purports to have been written February 2, 1954 but no one contends that it was written at that time. For some reason not shown Falzone dated the letter back, thereby making it appear to have been written in February during the preliminary negotiations leading up to the actual formation of a contract. Its references, terminology and setting all relate to the situation existent in February. Regardless of this fact, all the pertinent evidence indicates that the letter was supplied to plaintiff for the purpose of reducing to writing the terms of the contract of employment. Falzone left the corporation in September, 1954. His successor as president, Mr. Reutner, inquired of plaintiff in October, 1954 what arrangement the latter had with the company. Plaintiff testified that he told Reutner "exactly what was in that letter" and that that was "quite agreeable." The existence of an oral contract of employment is established by this record and is not controverted by plaintiff. When, in December, 1954 plaintiff made demand for commissions due under the contract Reutner searched the company records. In the course of this search his secretary (Falzone's former secretary) found her shorthand notes of the

dictation by Falzone of the letter in question. In this factual background appellant's contention that the letter, admitted by all to have been written in the fourth month of plaintiff's employment, constituted an offer to plaintiff looking toward a contract of employment, is unconvincing. Why would the corporation call upon an employee to accept or reject an offer of employment which had been accepted and under which the parties had been operating for nearly four months? There is nothing in the record to show that plaintiff went to work in March, 1954 with an understanding that there should be no contract until a written contract was executed, or that by the activity in June, 1954 the parties intended to abandon or repudiate the old oral contract and enter into a new written contract, or that the letter offered terms different from the pre-existing oral contract. The letter dated February 2, 1954 is in form an offer but in fact a written memorandum of a previously existing oral contract, signed by the party to be charged, and intended as such, and is sufficient to take the case out of the operation of the Statute of Frauds.

In Lash v. Parlin, 78 Mo. 391, a written offer to enter into a contract, later accepted orally, was held a sufficient memorandum under our Statute of Frauds, the Supreme Court saying, loc. cit. 395:

"We entertain no doubt but what the memorandum is sufficient under our Statute of Frauds, as construed by this court. Certainly it is not complete and perfect in itself, so as to render it an artificially drawn contract; but it is sufficiently definite and certain on its face to render it admissible. Being clearly admissible, there can be no doubt under the authorities cited, but what the parol evidence rejected by the court was admissible to explain and apply it to the contract actually existing between the parties. Parlin & Orendorff, the respondents, are the parties to be bound by this contract. It is signed by them by their agent, contains

an order on them to deliver certain goods to John F. Lash, the appellant by name; it contains an exact description of the property to be delivered, with the price to be paid for each article; it states the manner and place of execution; and it fixes the time and place of payment. This all seems plain enough. Here then we have a paper signed by the parties to be bound, by a person purporting to be their agent, designating on its face the party to be benefited, describing the property to be affected, stating the price to be paid, fixing the manner and place of delivery, and providing the time and manner of payment. Applying the test of common sense to this paper, what else can it mean than that it is intended to contain the memorandum of a contract between Parlin & Orendorff and John F. Lash, all the details of which have not been fully reduced to writing? We cannot read it in any other light."

Other authorities sustaining a written offer as a memorandum sufficient to satisfy the Statute of Frauds include Carter v. Western Tie & Timber Co., 184 Mo.App. 523, 170 S.W. 445; Williston on Contracts, Rev.Ed., Vol. Two, § 579, p. 1664; Corbin on Contracts, Vol. 2, § 503.

■ The fact that the letter was written after the formation of the contract does not prevent it from satisfying the Statute of Frauds. In Kludt v. Connett, 350 Mo. 793, 168 S.W.2d 1068, 145 A.L.R. 1014, the Supreme Court said, 168 S.W.2d loc. cit. 1070: "On its face the statute does not require the memorandum to be delivered nor to be executed at the same time as the contract. Undoubtedly a subsequent memorandum, if otherwise sufficient, will satisfy the statute * * *." And see Corbin on Contracts, Vol. 2, § 503; Williston on Contracts, Rev.Ed., Vol. Two, § 590; Restatement of the Law, Contracts, § 214.

■ Since the letter was not intended as an offer there was no necessity of showing that it was accepted in the manner prescribed in the letter. In this connection see Sawyer v. Walker, 204 Mo. 133, 102 S.W. 544. Accordingly, the trial court did not err in refusing to direct a verdict for defendant, in giving Instruction No. 1 or in refusing Instruction No. A in form as offered.

■ Appellant's second point is that the court erred in failing to direct a verdict for appellant for the reason that appellant was justified as a matter of law in discharging plaintiff as its sales manager for not devoting sufficient time to his duties and engaging in the operation of Crest Heating Company and Bill's Bottle Gas Co., both of which were in competition with the business of appellant. While appellant introduced evidence that plaintiff did not devote sufficient time to his duties as sales manager and that he organized and spent much time operating competing businesses, the question of the propriety of the discharge was hotly contested by plaintiff. Plaintiff denied that he reported for duty at Red-E-Gas for only an hour or an hour and a half a day and absented himself the rest of the time and denied that his presence at Red-E-Gas tapered off to almost nothing after Reutner assumed the presidency, as contended. Plaintiff testified that except when he was out on the road for appellant he performed his duties in appellant's office regularly from 8:30 a. m. to 5 p. m., working from 37 to 48 hours per week; that he organized and supervised the sales force, conducted sales meetings, and performed his duties as sales manager and that none of appellant's officers expressed dissatisfaction concerning his work. Plaintiff introduced evidence that the heating company was set up with the approval of appellant's president and for the benefit of appellant company, to expedite the installation of heating units Red-E-Gas was selling to customers; that Berry and Bartlesmeyer, members of appellant's board of directors, knew about plaintiff's interest in the heating company and raised no objection; that plaintiff made no profit from the operation

of the heating company and that as soon as he was requested by Reutner to do so plaintiff disposed of his interest therein. Plaintiff testified that Bill's Bottle Gas Co. was purchased by plaintiff and his wife under these conditions: BBG was about to be sold to a competitor of appellant. President Falzone and Vice-President Berry, informed of the situation, stated that appellant was unable to purchase BBG. Plaintiff then offered to buy it and resell to appellant any time it deemed advisable and Falzone said that would be "perfectly all right." Plaintiff's wife devoted full time to the operation of BBG. Plaintiff spent no time at all doing work for that company. BBG was a customer of appellant, from which it purchased all of the gas it sold. There was testimony from which it could be concluded that plaintiff was discharged not for neglect or breach of duty but because appellant, after October, 1954, changed its whole approach with respect to the sale of heating systems and appliances as a result of which the sales force was reduced and it became expedient to abolish the office of sales manager. The facts relating to the question whether the discharge was wrongful were in dispute, so that the question was one for the jury and not for the court to determine. Duerkob v. Brown, Mo.App., 255 S.W. 962. The trial court cannot be convicted of error in not declaring as a matter of law that the discharge of plaintiff was justified.

Appellant's final point is that the court erred in giving Instruction No. 2, which follows:

"The Court instructs the jury that even though you may find that Joseph A. Falzone had not actually been authorized by defendant corporation to bind defendant corporation to any contract to pay commissions to plaintiff and to employ plaintiff for two years, if so, still if you find that defendant corporation, by its own conduct, had made it appear to a person of ordinary prudence, using due diligence and discre-

tion, that Joseph A. Falzone, did have authority to bind defendant corporation to such a contract, and if you further find that, because of such conduct on defendant's part, if so, plaintiff was led to believe that Joseph A. Falzone possessed such authority, then you should find that Joseph A. Falzone had sufficient authority to bind defendant corporation to such a contract."

The only reference to Instruction No. 2 in appellant's motion for a new trial follows: "The Court erred in reading to the jury Instruction No. 2 for the reason that said instruction is an improper statement of the law of agency." On this appeal appellant does not pursue this point, but concedes in its brief that the statement of law contained in the instruction "may be correct." As a matter of fact this instruction is commonly used in submitting the question of apparent authority, Magnolia Compress & Warehouse Co. v. St. Louis Cash Register Co., 201 Mo.App. 201, 210 S.W. 125, loc. cit. 127, and was upheld by this court in Thimmig v. General Talking Pictures Corporation, Mo.App., 85 S.W.2d 208.

On this appeal appellant raises two new points, neither of which was raised in the trial court. Appellant urges, first, that Instruction No. 2 should not have been given because there was not sufficient evidence concerning the apparent authority of Falzone as president of the corporation to enter into a two-year contract of employment to make a question of fact for the jury and, second, that Instruction No. 2 did not contain a sufficient hypothesis of acts by defendant which, if true, would create apparent authority in its president to so act. Where a party filing a motion for new trial attacks an instruction with particularity he will be confined on appeal to the specific objection leveled against the instruction in the trial court. New points attempting to raise new objections in this court for the first time are not subject to review. Jameson v. Fox, Mo.App., 269 S.W.2d 140, loc. cit. 145; Hartmann v. St.

Louis-San Francisco Ry. Co., Mo.App., 280 S.W.2d 442, loc. cit. 445, and cases cited.

Accordingly, the judgment of the circuit court should be affirmed and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.