**INTERNATIONAL PLASTICS DEVELOPMENT, INC., et al., Appellants,**

v.

**MONSANTO COMPANY, Respondent.**

No. 53148.

Supreme Court of Missouri,
En Banc.

May 13, 1968.

Dissenting Opinion Nov. 12, 1968.

Guilfoil, Caruthers, Symington, Montrey & Petzall, Gerald M. Smith, Gordon G. Hartweger, Darold E. Crotzer, Jr., St. Louis, for (plaintiffs) appellants.

E. J. Putzell, Jr., John M. Bray, Coburn, Croft, Kohn & Herzog, Richmond C. Coburn, Thomas L. Croft, Terrence L. Croft, St. Louis, for (defendant) respondent.

BARRETT, Commissioner.

International Plastics Development is a domestic corporation with eight stockholders. It was engaged, according to the allegations of its petition, in the business of "promoting and selling" a building industry product called "Sculpt-Crete," a compound of various materials "which molded a dimensional surface to backing material such as concrete, plywood, masonite and other building materials." The principal stockholders, owners of over eighty per cent of the stock, and the moving spirits of the corporation were Close, Gittins and Morrill. Monsanto Company is the well-known chemical manufacturer based in St. Louis.

In June 1962, at the request of Monsanto, International submitted samples of its product for "examination, testing and evaluation." Subsequently International furnished Monsanto its "patent applications for analysis and evaluation." Thereafter Monsanto *"undertook negotiations"* (emphasis supplied) with International and its officers, Close and Gittins, the "objective of these *negotiations*" was the acquisition by Monsanto of all of International's stock and for a period of time the personal services of Close and Gittins. These negotia-

tions culminated in this three-count action for damages in excess of a half-million dollars by International, Close and Gittens personally, and all International stockholders against Monsanto. The trial court, after sustaining motions to dismiss all three counts for failure to state claims upon which relief could be granted (Civil Rule 55.33, V.A.M.R.), entered final judgments against the plaintiffs and they have appealed, thus presenting the question of whether the allegations of either of the counts, upon any theory, states a cause of action.

In the first count of their petition the plaintiffs allege that on November 6, 1962, "following the aforesaid negotiations," the parties "entered into an oral agreement" the terms of which in the main were fourfold: one, that International agreed to sell and Monsanto agreed to buy International's capital stock for $250,000.00 to be paid from sales of Sculpt-Crete; two, Monsanto assumed International's debts of $30,000.00; three, Monsanto agreed to employ Close at an annual salary of $15,000.00 and, four, employ Gittins as a consultant at $100.00 per day. The plaintiffs charge that despite their demands Monsanto failed and refused to perform its obligations under the agreement with the consequence that International lost the opportunity to promote and franchise Sculpt-Crete to its damage of $500,000.00, that the eight individual stockholders lost the agreed price of their stock, approximately $250,000.00, and Close and Gittins lost $60,000.00 and $45,000.00, respectively.

■ The parties are agreed that the court dismissed this count of plaintiffs' petition upon the theory that on its face it pleaded an oral contract falling within and therefore barred by the statute of frauds. The parties are not in agreement, however, as to which statute of frauds is specifically applicable. It probably makes no difference in the end result. Section 432.010 requires "any contract" or "any agreement that is not to be performed within one year

from the making thereof" to be "in writing and signed by the party to be charged therewith." While the dates are not alleged with particularity it appears from the allegations with respect to Close and Gittins and from their prayers for relief that their employment contracts, if not at will, were not to be performed within a year and, therefore, unless removed for some reason from the ban of the statute were required to be in writing. Campbell v. Sheraton Corp. of America, 363 Mo. 688, 253 S.W.2d 106; Godwin v. Dinkler St. Louis Management Corp., Mo., 419 S.W.2d 70, 72. Section 432.020 provides that "no contract for the sale of goods, wares and merchandise for the price of thirty dollars or upward, shall be allowed to be good * * * unless some note or memorandum in writing be made of the bargain, and signed by the parties to be charged with such contract." In Kludt v. Connett, 350 Mo. 793, 168 S.W.2d 1068, 145 A.L.R. 1014, a case relied on by the appellants, the court said, "It is undisputed that this section (432.020, RSMo 1959) covers the sale of corporate stock." See also Houston v. Mahoney, Mo.App., 219 S.W. 128. The appellants say that the contract is governed by the Uniform Commercial Code, RSMo 1959 Supp. Sec. 400.8–319, "a contract for the sale of securities is not enforceable by way of action or defense unless (a) there is some writing signed by the party against whom enforcement is sought." But the plaintiffs allege a contract of November 6, 1962, part of which was from that date "until the date of closing, January 1, 1963" and by its own terms the Uniform Commercial Code "shall become effective on the first day of July, 1965. *It applies to transactions entered into and events occurring after that date.*" Laws Mo.1963, p. 637.

But, as indicated, the specifically applicable statute of frauds is not the controlling factor, the appellants assert that they have alleged all the elements of a cause of action for breach of a contract (Missouri Military Academy v. McCollum, Mo.App.,

344 S.W.2d 636, 637) to buy International's stock and their point is this: "the oral contract may serve as a basis for recovery providing there is in existence sufficient proof to establish the factual existence of a contract." In support of this statement the appellants cite Kludt v. Connett, supra, and Fredericks v. Red-E-Gas Co., Mo. App., 307 S.W.2d 709. But in the Kludt case there was in point of fact a memorandum in writing and in the Fredericks case there was a letter, a writing, which satisfied the statute of frauds. But again, this is not the appellants' point, they do not rely on a memorandum and they do not rely on part performance or any other factor that might serve to remove an oral contract from the operation of the statute of frauds. The appellants say, and this is their point: "The Statute of Frauds does not require a written contract; it requires only, as one way of making an oral contract enforceable, that evidence be provided at trial in writing to establish the existence of such contract." Under this statement, and under the express terms of the commercial code, the appellants assert that the statute of frauds "contemplates trial of the issue." In this connection it is said that the statute of frauds is an affirmative defense (Civil Rule 55.10) and that under Missouri law "oral contracts may very well form the basis of recovery providing the proof at the trial is sufficient to establish that such a contract was in fact entered into." The appellants' argument may be but another way of saying that in no event may a trial court sustain a demurrer or motion to dismiss a petition merely because on its face it alleges an oral contract falling within the statute of frauds.

The basic difficulty with the appellants' contention is best illustrated by a case upon which they rely, Major v. St. Louis Union Trust Co., Mo.App., 64 S.W.2d 296. There the court sustained a demurrer to plaintiff's petition which alleged an "oral agreement" or option "for the purchase of *certain property.*" On demurrer the de-

fendant claimed that the contract was for the sale of land and therefore was unenforceable under the statute of frauds. The court observed that the statute of frauds did not "render a contract void, but goes merely to the remedy, and as such is a rule of evidence. It is an affirmative defense, and may be waived." But what the appellants overlook is this, l.c. 297, "In the instant case plaintiff's petition alleges an oral agreement, but nothing appears in the petition to indicate that the contract and agreement upon which the suit is brought has any connection with, or pertains to, 'the sale of lands,' * * * and therefore, even though plaintiff has pleaded an oral contract, the law presumes its validity, and *plaintiff is not called upon to affirmatively show in his petition that the contract is without the statute of frauds.* That it is within the statute of frauds is a matter of defense, but that defense cannot be invoked by demurrer." (Emphasis supplied.) See also Sherwood v. Saxton, 63 Mo. 78, 79; Phillips v. Hardenburg, 181 Mo. 463, 80 S.W. 891. But obviously the plaintiff's allegations and therefore their basic case does not fall in this category of cases. Here plainly, as the appellants reassert, they rely upon an oral contract, the subject matter and terms of which without exception fall within the unambiguous language of the statute of frauds.

On the other hand the respondent Monsanto relies on the rule enunciated in 1845: "Where the complainant in the bill shows a contract not in writing, and so expressly describes it, the defendant may demur; and unless the facts set forth in the bill are sufficient to withdraw the contract from the operation of the statute, the demurrer must prevail." Chambers v. Lecompte, 9 Mo. 575, 577; State ex rel. Uthoff v. Russell, Mo.App., 210 S.W.2d 1017; 37 C.J.S. Statute of Frauds § 267, p. 789; 49 Am.Jur. (Statute of Frauds) Sec. 611, p. 919. The Missouri cases and the instances in which the statute of frauds may and may not be invoked by motion to dismiss are collected in the annotation 158 A.

L.R. 89, "Manner of pleading statute of frauds as a defense." It is unnecessary to further demonstrate from the allegations, on its face and without exception the petition alleges an oral contract falling within the statute of frauds and the mere claim that under the statute the question is solely one of proof on trial after an affirmative plea is not sufficient to remove the cause from the force of a motion to dismiss for failure to state a claim upon which relief can be granted.

■ In Count II the plaintiffs, after incorporating paragraphs 1 through 6 of Count I which includes the statement that "defendant undertook negotiations with" plaintiffs, the objective of which was the acquisition of International's stock, charged that Monsanto "on the pretext that its actions were necessary as preparations to close its agreement, assumed direction and control of the operation of International." In this connection it is charged that Monsanto "(b)y its actions * * * appropriated to its own use the direction and control of International's business and its product" and thus after "subsequent abandonment of the direction and control of International and its product," artfully, maliciously and tortiously, destroyed the commercial value of its product, Sculpt-Crete, to the company's actual and punitive damage of one million dollars. In their brief, treated as though the count relates to all plaintiffs, it is said that this count seeks damages for Monsanto's "malicious and tortious appropriation to its own use and subsequent abandonment of the direction and control" of Sculpt-Crete. Appellants say that this count charges a tort—"the misappropriation of the business and product of another."

The appellants do not purport to cite any authority, text or cases, for their position, instead they rely on the analogies they distill from International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211; Ultra-Life Laboratories v. Eames, 240 Mo.App. 851, 221 S.W.2d 224;

State ex rel. Duggan v. Kirkwood, 357 Mo. 325, 208 S.W.2d 257, 2 A.L.R.2d 216 and Kurfiss v. Cowherd, 233 Mo.App. 397, 121 S.W.2d 282. It is not necessary to analyze and distinguish these cases in detail and this is not to say that there is no possible analogy or that from unusual circumstances new tort actions may not evolve by analogy or otherwise and become newly recognized principles of substantive law. It is to say, however, that the analogies are imperfect and that the allegations here do not compel recognition of new tort concepts. International News was an unfair trade case, the defendant "appropriating news" gathered by complainant, and the court did say: "The parties are competitors in this field; and, on fundamental principles, applicable here as elsewhere, when the rights or privileges of the one are liable to conflict with those of the other, each party is under a duty so to conduct its own business as not unnecessarily or unfairly to injure that of the other." 248 U.S. l.c. 235–236, 39 S.Ct. l.c. 71. The appellants overlook the framework of this utterance, "the question of what is unfair competition in business must be determined with particular reference to the character and circumstances of the business," here "competitors in business, as between themselves." In that case "fraud upon complainant's rights" and "(b)esides the misappropriation, there are elements of imitation, of false pretense, in defendant's practices." Here the parties are not competitors and it is not claimed that this is an unfair trade case (National Telephone Directory Co. v. Dawson Manufacturing Co., 214 Mo.App. 683, 263 S.W. 483), the alleged tortious appropriation here, according to the petition, arose in "negotiations" the object of which was the sale of plaintiffs' stock to Monsanto. Ultra-Life Laboratories v. Eames was a "trade secrets" case and there was a written contract. signed by all the parties. And State ex rel. Duggan v. Kirkwood was a suit for a declaratory judgment and involved a written contract of employment in which the employee agreed "nor will he, without such

consent, appropriate, use or employ to his own advantage or the advantage of others, either directly or indirectly, any such information or knowledge." In Kurfiss v. Cowherd an architect "claims a right of property by reason of common-law copyright" for which he had no case because "the idea itself is actually published with his consent." But here as the second headnote in the official report of Brunner v. Stix, Baer & Fuller, 352 Mo. 1225, 181 S.W.2d 643, states "Plaintiff's petition did not proceed on the theory defendant failed to pay for the transfer of any claimed common-law or statutory right in a literary work. It involved contract law, charging defendant breached a contract to pay for the use of plaintiff's plan [for a department store sales campaign.]"

On the other hand, as to Count II, Monsanto points to the conclusional character of some of plaintiffs' allegations but primarily its responsive argument is based upon the claim that whatever was done under this count "all of defendant's acts were done with plaintiffs' consent, and there is no charge that defendant intended to or did profit at all by its acts or that any property right of plaintiffs was infringed upon at all." At another point in its brief Monsanto says "there is no charge that defendant, in doing any of the specifically pleaded acts, was acting in any way contrary to International's desires and *the only fair inference is that such acts were done with International's full consent.*" (Emphasis supplied.) But here with Monsanto as with plaintiffs its analogies of no action in trover for the conversion of laundry or bakery routes and other intangible property (Adkins v. Model Laundry Co., 92 Cal.App. 575, 268 P. 939; Stern v. Kaufman's Bakery, Inc., Sup., 191 N.Y.S.2d 734) are not too persuasive, certainly they do not support any argument concerned with "consent." And it is not believed that "consent" is a fair or permissible inference from a petition attempting to charge a cause of action in tort of taking over or

appropriating the business or product of another.

Nevertheless taking the count at face value and sticking closely to its allegations it does not charge a cause of action in tort, at least, fairly construed, it does not state a cause of action for malicious interference with the business relations of another. 30 Am.Jur. (Interference) Sec. 44, p. 85. "Appropriation" in the circumstances is charged, unquestionably an intentional act, but Count II as well as Count I, in all candor, allege that the causes of action arose in "examination, testing and evaluation" of product, in "analysis and evaluation" of product and finally but most significantly and importantly of all in *"negotiations,"* the objective of which was the eventual purchase of International's stock. "Negotiation" is a broad term, not in all connotations a term of art, but in general it means "the deliberation which takes place between the parties touching a proposed agreement; the deliberation, discussion, or conference on the terms of a proposed agreement; * * * a treating with another with a view to coming to terms * * *. Negotiations look to the future, and are preliminary discussions; the preliminaries of a business transaction." 66 C.J.S. p. 1. One court has said that 'negotiating' implies a situation where the interest of the buyer has been aroused to the point that the person may be considered a likely purchaser." Nichols v. Pendley, Mo.App., 331 S.W.2d 673, 676–677. Another court has said that "an allowable use" of "negotiated" is "treating with—holding intercourse with a view to coming to terms upon some matter" (State ex rel. Carrollton School Dist. v. Gordon, 231 Mo. 547, 564, 133 S.W. 44, 47), while another has said that "negotiate" in a petition "should be construed to mean conversation in arranging the terms of a contract." Northrop v. Diggs, 128 Mo.App. 217, 223, 106 S.W. 1123, 1125.

This is not to say that plaintiffs' cause of action is to be determined upon the mere use and definition of a word. The point is, however, that the transaction and basis of plaintiffs' and defendant's relationship arose in "negotiations" and while the transaction may have been "consentual" the important thing here in considering whether there has been an unlawful "appropriation" or malicious interference with one's business is that under all the allegations of plaintiffs' petition the alleged interference was not "without justification or legal excuse. If the act of interference is justifiable, that is, if there is a legal excuse therefor, it is not actionable, even though damage may result therefrom, but if the act of interference is without justification it is actionable, except where the act of interference constitutes an exercise of an absolute right." 30 Am.Jur. (Interference) Sec. 47, pp. 87–88. Thus here, fairly construed and in its broadest terms, the petition of plaintiffs on its face shows that whatever was done by Monsanto was done in the exercise of the lawful right of "negotiation" and therefore did not constitute an "appropriation" or other malicious interference with plaintiffs' business. Furthermore, in connection with both Counts I and II, while it is charged that Monsanto's acts were intentional and malicious, it is not charged that there was fraud in their "negotiations" in any actionable sense. Godwin v. Dinkler St. Louis Management Corporation, Mo., 419 S.W.2d 70.

In Count III the plaintiffs adopt by reference the first six paragraphs of Count I and paragraphs two and three of Count II and then they allege that Monsanto knew that throughout the period of September 1962 through March 1963 International ceased promoting and selling its product, Sculpt-Crete. The third paragraph of Count III alleges that in September 1962 Monsanto "was possessed of all facts upon which it based its decision in March 1963, to discontinue its relationship with plaintiff, International, but *it did negligently fail to advise plaintiff* International *of said facts or of its intention to discontinue such relationship,* and did negligently lead said plaintiff to believe that

such relationship was permanent" causing plaintiffs the loss of "opportunity to issue franchises for the promotion and sale of the product" to its damage of $500,000.00.

As to this point both parties have cited several cases dealing with the truisms of foreseeability, breach of duty and general tort liability for negligence. But again the appellant relies on analogies but particularly on Smith v. Dravo Corp., 7 Cir., 203 F. 2d 369, in which the court stated the essence of plaintiff's action as: "Stripped of surplusage, the averment is that defendant obtained, through a confidential relationship, knowledge of plaintiffs' secret designs, plans and prospective customers, and then wrongfully breached that confidence by using the information to its own advantage and plaintiffs' detriment." The subject matter there was "steel freight containers" that could facilitate "ship and shore handling and transportation of cargoes." In the first place there was a "trade secret" and that was "the very basis of plaintiff's claim." There were other questions and problems but appellant relies on this case as supporting its theory that the "relationship arising from negotiations has sufficient recognition in the law to give rise to a duty in each party not to knowingly injure the other." In summary, appellant states its claim of negligence and tort liability in this language: "The gravamen of the negligence charged was in failing to advise International of its intention to sever the relationship at a time when such severance would not have resulted in the complete destruction of International's business." In its reply brief, without reference to specific allegations of fact, appellants' contention is stated in these terms: "Where one party to the negotiations is aware that a delay in its decision will have the effect of injuring, or in this case destroying, the other party to the negotiations and when that party has all facts necessary to make such determination, *his negligent failure to arrive at a decision and his negligent leading-to-believe that a certain result will ensue constitutes actionable negligence.*"

Monsanto responds in the same general terms: "It is elementary that there is no liability in tort for negligence without the presence of a duty owed by defendant to plaintiff which is breached by defendant." Monsanto says "(i)n summary, plaintiffs are asking this Court to create for the first time an entirely new concept of negligence liability for failing to reach prompt negotiation decisions." And as to tort liability there may be some analogy in two of the respondents' cases, Consumers Cooperative Association v. McMahan, Mo., 393 S.W.2d 552, and United States Fidelity & Guaranty Co. v. Mississippi Valley Trust Co., Mo.App., 153 S.W.2d 752. Although in the Consumers case the plaintiff was depending on a duty imposed by law, a statute, on warehousemen. In the other case one count of a petition "purports to be an action for negligence, but as we read the petition no action for negligence is stated" because "it is. clear that the pleader does not state a case arising from negligence or carelessness, *but states acts of the Trust Company knowingly and intentionally done*" which the court construed to be an action for money had and received "as distinguished from a suit for tort." (153 S. W.2d l.c. 756–757.)

Nevertheless, it is believed that Count III, in alleging that Monsanto "did negligently fail to advise plaintiff International of said facts or of its intention to discontinue such relationship, and did negligently lead said plaintiff to believe that such relationship was permanent" runs afoul of somewhat obscure but certainly recognized principles, not referred to by the parties, and therefore does not state a cause of action on any theory. In essence the allegations of Count III "deals only with the liability for harm caused to a person by a mere refusal to enter into business relations with him." 4 Restatement, Torts, p. 36. Specifically, without considering its

rationale, the rule is that "One who causes intended or unintended harm to another by refusing to enter into a business relation with the other or to continue a business relation terminable at his will is not liable for that harm" (if the refusal does not fall in one of three categories not present here). 4 Restatement, Torts, Sec. 762. It is not necessary here to attempt an articulation of the rule, it is fully discussed in Prosser, Torts, Sec. 123, but basically "if we begin with the assumption that the defendant has either exercised or violated a 'legal right,' it is difficult to see what more remains to be said." Prosser, p. 951. In 1 Harper & James, Torts, Sec. 6.11, p. 513, these sentences may be excerpted: "— the general rule appears to be that liability for the interference even with existing contracts cannot be based on mere negligent conduct. A fortiori, the general rule denies liability for unintended, even though negligent, interference with mere prospective advantage under contracts not yet completed." By the same token, it may be interpolated, mere negotiations and "expectation that a contract will be entered into and the fact that negotiations have been made to carry that expectation into effect do not constitute a contract." 1 Williston, Contracts, Sec. 27, p. 66. Hunt v. Simonds (1854) 19 Mo. 583, was an action "against the officers of the various insurance companies in the city of St. Louis, to recover damages for an alleged conspiracy to ruin him in his business" of steamboat captain and pilot. The court discussed at length damages resulting from failure to contract with another but applicable in the immediate connection the court said, l.c. 592, "but if the injury results from an exercise of their legal rights, he has no redress." House of Materials, Inc., v. Simplicity Pattern Co., 2 Cir., 298 F.2d 867, was an action for treble damages under the Clayton Act but persuasively here in discussing Sec. 762 of the Restatement of Torts and the "intentional infliction of injury" as an actionable tort, the court observed: "it generally has been held that 'fundamental assumptions in free business enterprise,' including the belief that 'each business enterprise must be free to select its business relations in its own interest,' may justify or excuse the act of one who causes harm to another as a collateral consequence of his refusal to continue a business relation terminable at will," and, therefore, it was held that Simplicity's conduct in exercising its contract option not to renew a contract because plaintiff was suing it under the Clayton Act "cannot give rise to tort liability." And here stripped of all but its essence Count III charges as negligence only that Monsanto exercised its legal right to terminate at best the tenuous relationship of mere "negotiation."

For all the indicated reasons the court properly dismissed plaintiffs' amended petition and the judgment is affirmed.

PER CURIAM:

The foregoing opinion by Barrett, C. written in Div. Two, is adopted as the opinion of the Court en Banc.

HOLMAN, C. J., and HENLEY, EAGER, DONNELLY and STORCKMAN, JJ., concur.

FINCH, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents as to all Counts and concurs in dissenting opinion of FINCH, J., as to Count I.

DISSENTING OPINION

FINCH, Judge (dissenting).

I dissent with respect to the holding in the principal opinion on Count I.

The trial court dismissed Count I of plaintiffs' petition by sustaining a motion

which alleged that said Count I failed to state a claim on which relief could be granted. The parties are in agreement that the trial court acted on the theory that said count on its face pleaded an oral contract falling within the provisions of § 432.020, RSMo 1959, V.A.M.S.

The statute of frauds is made an affirmative defense by Supreme Court Rule 55.10, V.A.M.R. The burden is not on a plaintiff under § 432.020 to plead facts to avoid the application of that section. It is possible, on motion for summary judgment, to dispose of a case on the basis of the statute of frauds where the statute has been pleaded and sufficient proof to show its applicability is supplied by affidavit or otherwise. Brooks v. Cooksey, Mo., 427 S.W.2d 498. However, the mere allegation in the petition that the contract relied upon was oral does not call for dismissal of the petition under the provisions of § 432.020.[1] Consequently, I do not consider that it was proper to dismiss Count I on the basis of § 432.020 where the statute had not been affirmatively pleaded and no proof was presented to the court to establish that plaintiffs' cause of action was barred under said statutory section.

I express no opinion as to whether plaintiff can recover on Count I or as to whether the count might properly be dismissed on a motion for summary judgment after the statute of frauds is pleaded and after affidavits or other proof have been supplied. I merely would hold that Count I was not subject to dismissal on a motion to dismiss on the theory that the count failed to state a claim on which relief could be granted. I would reverse the action of the trial court in dismissing Count I and would remand it to the trial court for further proceedings.

With respect to the action of the trial court in dismissing Counts II and III of plaintiffs' petition, I am dubitante.

1. This would not be true in cases falling under the provisions of § 432.010. See

Roth v. Goerger et al., 118 Mo. 556, 24 S.W. 176.