[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal by the plaintiff, the Bloomfield Education Association (BEA), filed pursuant to Connecticut General Statutes Section 1-21i(d), from the decision of the defendant, Freedom of Information Commission (FOIC), ordering the Bloomfield Superintendent of Schools to provide defendants, Robert A. Frahm and the Hartford Courant, with copies of all grievances filed under the current teachers' employment contract, with certain exceptions.
The Return of Record discloses that on December 12, 1991, Frahm and the Hartford Courant requested that the Bloomfield Superintendent of Schools forward copies to them of all grievances alleging violations of the current teachers' employment contract with the Bloomfield Board of Education except for CT Page 6711-Q those grievances dealing with teacher performance or evaluation. On December 30, 1991, the Superintendent notified Frahm and the newspaper that he would withhold compliance with their request absent the consent of the BEA.
On January 17, 1992, Frahm filed a complaint with the FOIC concerning the denial of his request for these records. On July 27, 1992, a FOIC hearing officer conducted a hearing on this matter, at which hearing the BEA was granted party status. On November 23, 1992, the FOIC rendered a final decision which adopted the proposed decision of the hearing officer. This decision ordered the Superintendent to provide copies of the materials sought by Frahm and the Hartford Courant. On December 3, 1992, the BEA filed this appeal contesting the decision of the FOIC.
The court finds that the BEA is the exclusive bargaining agent for the public school teachers working for the Town of Bloomfield and was a party to the employment contract which generated the records sought by Frahm and the Hartford Courant. As a result, the BEA was aggrieved by the decision of the FOIC ordering disclosure of the grievances filed under that contract.
For administrative appeals filed under the provisions of Connecticut General Statutes Section 1-21i(d), the scope of judicial review is defined by Connecticut General Statutes Section 4-183(j). That subsection indicates that the reviewing court may only reverse the decision of an administrative agency if that agency's decision is:
"(1) in violation of constitutional or statutory provisions;
(2) in excess of the statutory authority of the agency;
(3) made upon unlawful procedure;
(4) affected by other error of law;
 (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The burden of proof in administrative appeals is on the party attacking the agency's decision, Lovejoy v. Water Resources CT Page 6711-R Commission, 165 Conn. 224 (1973), p. 229. The underlying facts found by the FOIC are undisputed by the plaintiff. It is only the legal conclusions drawn from those facts which the plaintiff contests. The plaintiff's position is that grievances filed under the teacher's employment contract, which contract is the product of collective bargaining, are exempt from disclosure by virtue of Connecticut General Statutes Section 1-19(b)(9), and that the FOIC's decision to the contrary is a misinterpretation of that statutory exemption.
General Statutes Section 1-19(b)(9) states that disclosure is not required for "records, reports and statements of strategy or negotiations with respect to collective bargaining." The decision of the FOIC found that "the grievances sought by the complainant contain . . . the grievants' names, the names of the persons against whom the grievances were filed, the nature of the complaints, a reference to the contract sections at issue, and the working conditions, if any, complained of." (Return of Record, Item 12, para. 13). Further, the decision found that the "disclosure of the requested grievances would not reveal `strategy or negotiations' involved in the collective bargaining process," (Return of Record, Item 12, para. 14).
At oral argument, the defendants conceded that the grievance resolution process is part of collective bargaining. Therefore, for purposes of this opinion, the court assumes that to be the case without deciding that issue. Thus, the dispute among the parties is a narrow and purely legal one, viz. whether the filing of a grievance under the contract constitutes a record, report, or statement of strategy or negotiations with respect to the grievance resolution process. There is no claim that the written grievances are not records, reports, or statements, but rather the issue is whether they are records, reports, or statements of "strategy or negotiations."
The plaintiff submits that the filing of a grievance initiates the resolution process and is a statement of the grievant's claim. Such grievances are often drafted with an eye toward eventual mediation or compromise. For this reason, they sometimes contain inflated or exaggerated claims in anticipation that the give-and-take of the resolution process will whittle away at each side's initial position. The plaintiff analogizes the filing of a grievance preliminary consideration statement with regard to contract negotiations. It points out that the FOIC has previously ruled that such preliminary consideration statements constitutes "statements, records, or reports of strategy" under Connecticut General CT Page 6711-S Statutes Section 1-19(b)(9), Radford v. Trumbull, F.I.C. 79-189 (May 24, 1980), paragraph 9.
The defendants' response is two-fold. First, they contend that, although the grievance resolution process is part of collective bargaining, the exemption expressed in Connecticut General Statutes Section 1-19(b)(9) only applies to collective bargaining which pertains to hammering out an employment contract and not to collective bargaining collateral to the making of the employment agreement. Second, if the exemption applies to all manner of collective bargaining, the document constituting the filing of a grievance is neither a record, report, or statement of strategy nor negotiations with respect to the disposition of that grievance.
I.
As to the proposition that the phrase "collective bargaining" as used in Connecticut General Statutes Section 1-19(b)(9) is limited to the collective bargaining engaged in to obtain a contract in the first instance, and not to collateral issues, the court finds no statutory language supporting such a limitation. If the legislature meant to exclude from the exemption certain kinds of issues subject to collective bargaining, it could have done so explicitly. Where the language of the statute exempting disclosure is clear, the court ought to give effect to the apparent intent of the legislation, Healy v. FOIC, 18 Conn. App. 212 (1989), p. 216.
Additionally, the FOIC's decision in this case was not premised on the ground that Connecticut General Statutes Section1-19(b)(9) only applies to collective bargaining which results in a new contract, but instead it was based on the ground that the grievances, as filed, do not "reveal" strategy or negotiations. For these reasons the court construes the language of Connecticut General Statutes Section 1-19(b)(9) to include all manner of collective bargaining.
II.
Turning to the central issues of this case, i.e. whether a written grievance filed under the teachers' employment contract constitutes a record, report, or statement of strategy or negotiations, the court addresses the terms "strategy" and "negotiations" separately.
A. CT Page 6711-T
Webster's Ninth New Collegiate Dictionary defines "strategy," pertinent to the issues in this case, to mean "a careful plan or method" and "the art of devising or employing plans or strategems toward a goal." Also, Words and Phrases, "strategy" indicates that, in the context of contracts, this term can mean those acts and representations engaged in by the parties entering into a contract relation, each endeavoring to make the best terms for himself in the transaction.
In the instant case a report, record, or statement of strategy would appear to be a recordation of plans or methods of proceeding to obtain a favorable outcome in the grievance resolution process. One would expect such records to be of an internal nature, i.e. designed to communicate information to another who stands on the same side of an issue as the author of the plan or method or strategy. Such records might typically comprise discussion of different avenues of approach to a problem, an evaluation of likelihood of success, and a discussion of possible repercussions if a particular tack is followed.
It is true that the filing of a grievance might indirectly disclose a strategem to a discerning observer, but such indirect revelation falls outside the ambit of the exemption. As noted above, the FOIC determined that the grievances filed contain the disputants' names, the nature of the complaint, and the relevant provision of the agreement. There was no evidence before the FOIC that such documents are intended predominantly to convey information regarding tactics to anyone. The grievance is filed to state the particulars of a complaint and initiate the resolution process under Article III of the contract (Return of Record, Item 9). The court finds that the plaintiff has not proven that the FOIC erred in determining that the filing of a grievance is not a report, record, or statement of strategy under Connecticut General Statutes Section1-19(b)(9).
B.
The parties have cited no Connecticut cases, and the court's research discloses no Connecticut cases, which construe the word "negotiations" relevant to the present case. Word and Phrases "Negotiations" contains an exhaustive review of the cases from other jurisdictions which construe this word, including cases bearing on labor relations and dispute resolution. These cases indicate that, unlike records of "strategy" which imply a CT Page 6711-U communication intended for consumption by members of one's own camp, records of "negotiations" are essentially external communications designed to inform the opposing camp of possible means of settling a dispute or reaching an agreement. The question before the court in the case sub judice becomes one of whether the mere filing of a grievance, as distinguished from subsequent grievance resolution activity under the teachers' employment contract, constitutes "negotiations."
The case of International Plastics Develop., Inc. v. Monsanto Co., 433 S.W.2d 291 (Mo. 1968), summarizes the meaning of "negotiations" contained in many of the cases construing this word. At p. 296, the Missouri Supreme Court stated:
 "Negotiations is a broad term, not in all connotations a term of art, but in general it means the deliberation which takes place between the parties touching a proposed agreement; the deliberation, discussion, or conference on the terms of a proposed agreement; a treating with another with a view to coming to terms. Negotiations look to the future, and are preliminary discussions; the preliminaries of a business transaction." (quotation marks, citations, and ellipsis deleted and emphasis added).
In the specific context of labor disputes, "negotiations" has been described to be the "process of submission and consideration of offers until an acceptable offer is made, and accepted," Gainey v. Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, 275 F. Sup. 292
(D.C. Pa. 1967), p. 300 (emphasis added).
From the above descriptions of the meaning of "negotiations" one can glean that an essential element of that word is the existence of an offer of possible settlement. That is, the word "negotiations" implies offers and counter-offers between the parties to narrow the gap between those parties. It is the disputants attempt to find common ground by conferring with each other.
The filing of a grievance appears to fall outside the meaning of negotiations as described above. As the FOIC found, the lodging of a grievance simply describes the particulars of a complaint. It contains no discussion regarding proposed settlement of the complaint. it is important to note that Article III of the teachers' employment contract, which article sets forth the grievance contains a subsection, 2.a., which, in turn, contains a provision CT Page 6711-V whereby the "appropriate Association officer shall recommend in writing a proposed disposition of [the] grievance" (Return of Record, Item 9, p. 3). This proposed disposition is separate and distinct from the filing of the grievance.
In the case of Rutland Railway Corporation v. Brotherhood of Locomotive Engineers, 188 F. Sup. 721 (DC. Vt. 1960), p. 726, the federal district court held that, in the course of a labor dispute, the making of a complaint is not in itself negotiations. This court agrees with this holding that the making of a complaint is not negotiations regarding resolving the complaint, and finds that the word "negotiations", as used in Connecticut General Statutes Section 1-19(b)(9) with respect to grievances refers to the discussions, conferences, or other deliberations between the disputants concerning possible resolution of the grievance after the filing thereof.
Also, the court must give "great deference" to the construction given a statute by the agency charged with its enforcement, Lieberman v. State Board of Labor Relations, 216 Conn. 253
(1990), p. 263. In the instant case, the FOIC, the agency charged with enforcing the provisions of Connecticut General Statutes Section 1-19, has interpreted the exemption provision of Connecticut General Statutes Section 1-19(b)(9) to exclude the filing of the grievances in question.
Affording the agency this deference, in conjunction with the court's analysis of the statutory language of Connecticut General Statutes Section 1-19(b)(9), the court finds that the plaintiff has failed to meet its burden of proving that the FOIC acted improperly with reference to the scope of judicial review enumerated in Connecticut General Statutes Section 4-183(j).
Therefore, the administrative appeal is dismissed.